KELLEY BROS. & SPIELMAN v. DIAMOND DRILL & MACHINE CO.

(Circuit Court of Appeals, Third Circuit. June 29, 1903.)

No. 12.

1. PATENTS—INFRINGEMENT—COIL CLASPS FOR FASTENING BELTS.

The Jackson patent, No. 433,791, for a coil clasp for fastening belts, etc., claim 7, construed, and *held* not limited to a construction in which the strips formed by the ends or edges of the belt or material within the coils overlap or abut each other so as to form a complete closure, and as so construed *held* infringed.

Acheson, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 120 Fed. 282.

The following are the figures referred to in the opinion:

Horace Pettit, tor appellants.
Wm. C. Strawbridge, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and BUF-FINGTON, District Judge.

BUFFINGTON, District Judge.   In the court below the Diamond Drill & Machine Company, assignee of patent No. 433,791, for a coil clasp, granted to Calvin Jackson, August 5, 1890, brought suit against Kelley Bros. & Spielman charging infringement of its seventh claim, and from a decree adjudging infringement thereof the respondents took the present appeal.   The particular application of the coil clasp here involved is to leather and other belting used in transmitting power in machinery.   Prior to the patent in suit, connection between the ends of leather belting was generally made by interlacing them together by a rawhide lacer passed through holes at either belt end, or by skiving such ends and gluing them.   Jackson's device consisted of piercing the ends of the belt by a series of equidistant holes. Through those at one end was passed a spiral right-handed metallic screw, and a like left-handed one through the holes in the other end. The two coils were then intermeshed, and through the opening formed thereby a pin was passed which locked or clasped the two coils together.   This coil clasp formed a flexible metallic joint or hinge, and it was easy to connect or disconnect the ends by inserting or withdrawing the pin.   The joint formed an even running surface, and this reduced the vibration of boxes and shafting.   The utility and value of the device were fully shown by the proofs.   We concur in the conclusion reached by the court below that Jackson's patent was valid, and address ourselves simply to a present discussion of the question of infringement.   It turns on the construction to be given the term, "whereby strips are formed within each coil," found in the seventh claim, which is for "the combination, with the belt, bag, or other article having ends or edges to be connected, said edges each having a row of apertures, of individual spiral coils extending through said apertures, whereby strips are formed within each coil, and a rod to be passed through and removed from the space formed by the over-lapping portions of the said coils, substantially as set forth."   An examination of the specifications and drawings shows the patentee contemplated the use of his coil clasp for two purposes—the one was to effect a complete closure, as in the case of a bag or other receptacle; the other to form a union or connection, as of the ends of a belt.   To secure the former, he made the edges of the material to either overlap or abut; to obtain the latter, it sufficed to simply unite or link the edges.   He showed closure by overlapping in figure 3, by abutting in figures 6 and 7, and by linking in figures 4 and 5. The specification of the invention begins by detailed reference to the drawings.   Figures 1 in side elevation, and 3 in transverse section, show a complete closure by overlapping of ends; figures 6 in side elevation, and 7 in transverse section, a complete closure by abutting ends; while figures 4 in side elevation, and 5 in transverse section, show connection or union by simply linking the ends; and open longitudinal interstices are clearly defined in the device shown in

figure 4. The two modes, viz., closure and simple connection, are by reference to figures 3 and 5, respectively, pointed out in the specification, where the patentee says:

"In some cases I allow the edge of the belt or other material to which the clasp is applied to project some distance into the spiral, so that it may overlap the adjoining spiral when the clasp is united, as shown in figure 3. In other cases I allow the adjoining edges of the leather of fabric to lie in the same plane, as shown in figure 5, when the connecting wire, C, will also be inserted in the two spirals, so as to lie in the same plane with the leather or fabric united."

In view of these different constructions, it seems to us that the combination of the seventh claim should not be restricted or limited to one in which the strips formed by the end or edges within the coil necessarily overlap or abut each other. True, the coils are described as overlapping, but there is no such expressed limitation of the strips. There is likewise no expressed purpose of closure in this claim, as, for example, is the case in the sixth claim, "whereby the space within the coils will be practically closed, and a tight joint formed," and the eighth, "whereby when the coils are pressed latterly together, and the rod inserted, the edges of the said strips will be held together to close the mouth of the bag." In the seventh claim the only expressed purpose is, "ends or edges to be connected." In view, therefore, of the explicit language in other claims where closure occurred, and of the disclosure in the specification of a form of simple connection where nonoverlapping and nonabutting strips were shown, and closure could not be thereby effected, we think the limitation of overlapping or abutting should not be imposed on the strips in this claim. It is true in the specification we find this language:

"By having the holes, a, a proper distance from the edges of the fabric, A, a strip of leather or other fabric will be formed within each coil. These strips are very important, as they make the clasp tight, so that, when applied to a bag or other receptacle, a complete closure thereof may be effected, as will be seen in Fig. 7. In Fig. 3 the strips occupy the concavo-convex spaces formed by the two series of coils, while the rod occupies the central space formed by the overlapped portions of the coils, and thus a tight and firm joint is formed by the rod forcing the coils against the opposite strips."

But it seems to us that this language, by its very reference to the specific forms illustrated in Figs. 3 and 7, and to a single object, "when applied to a bag or other receptacle," shows that it was not intended to apply to other constructions disclosed by the specifications, and especially to those wherein closure was not designed, and could not be applied in that a belt was not a "bag or other receptacle." Nor is there anything in the file wrapper necessitating imposition of any limitation upon the term "strip." The use of that word in the amended claim was not at the suggestion of the office or to avoid any reference. It seems to have been employed as a term of description by the patentee himself. Moreover, it will be seen that the applicant's reference to strips in his office letter, viz., "applicant has found that by forming a series of apertures in the meeting edges of the parts to be fastened, and placing said apertures a greater or less distance from the said edge, that they may be made to abut, as in

Fig. 7, overlap, as in Fig. 3, or be in the same plane, as in Fig. 5." The three alternative forms in his original figures were all insisted upon, for figure 5 was, as we have seen, a transverse section of figure 4, which distinctly shows nonclosure. It will therefore appear that the subsequent amendment, the language of which we have quoted above as to the importance of the strips, cannot be read as applied to all three forms, but refers only to the use of them in the two constructions embodying overlapping and abutting. In view, too, of the examiner's comment that "the word 'strips,' as used in the sixth and seventh claims, fails to clearly define the construction referred to," the subsequent allowance of that claim in that form would indicate that no more specific definition or limitation of that term was required. In the absence, then, from the seventh claim, of any other limitation of the strips by width or function than that they "are formed within each coil," we do not feel justified in asserting one by construction. So interpreting the claim, we are of opinion the court below rightly adjudged the respondent's device infringed. Its decree will be affirmed, and this appeal dismissed, at the appellants' cost.

ACHESON, Circuit Judge. I dissent from the conclusion reached by the majority of the court. The invention in question was very far from being a primary one. In view of the prior patents, the defense of anticipation can be avoided only by confining the claims within the very narrow limits. The patent, confessedly, is for special forms of construction. "My invention," says the patentee, "consists in the construction and arrangement of parts hereinafter described and claimed." The declared object of the invention is to "provide a simple, cheap, and efficient clasp for mail bags, boots and shoes, gloves, trunks, valises, and traveling bags, grain bags, corsets, belts, and for similar uses." Manifestly, the word "belts," as here employed, was intended to mean belts worn about the person. There is nothing in the patent to indicate that power belting was in the mind of the inventor. The claim which the appellants are held to have infringed is as follows:

"(7) The combination, with the belt, bag, or other article having ends or edges to be connected, said edges each having a row of apertures, of individual spiral coils extending through said apertures, whereby strips are formed within each coil, and a rod to be passed through and removed from the space formed by the overlapping portions of the said coils, substantially as set forth."

This is the only claim containing the language, "whereby strips are formed within each coil," and the concluding words of the claim, "substantially as set forth," for the true understanding of the claim carry us back to the amendment simultaneously inserted in the specification, to wit:

"By having the holes, a, a proper distance from the edges of the fabric, A, a strip of leather or other fabric will be formed within each coil. These strips are very important, as they make the clasp tight, so that when applied to a bag or other receptacle a complete closure thereof may be effected, as will be seen in figure 7. In figure 3 the strips occupy the concavo-convex spaces formed by the two series of coils, while the rod occupies the central space formed by the overlapping portions of the coils, and thus a tight and firm joint is formed by the rod forcing the coils against the opposite strips."

The letter of the applicant's solicitors transmitting the above amendment, in order to meet a reference to a prior patent which the office had cited against the applicant, stated:

"Further than this, applicant has strips within each coil which, in connection with the rod, effectually close the mouth of the bag, and nothing of the kind is even hinted at in the patent."

Again, there were two prior sets of claims which were rejected by the office on earlier patents and were canceled by the applicant. Claim No. 3 of the first set was as follows:

"(3) The combination, with perforated leather or a fabric, of two spiral coils inserted in the edges of the leather or fabric, and a connector adapted to be inserted in the coils, substantially as described."

Claim No. 4 of the second set was as follows:

"(4) The combination, with the edges of the article, each having a row of apertures, of a separable fastening formed of separate and independent spiral coils screwed through the apertures of both series, and adapted to be pressed laterally together throughout their lengths to overlap their coils, and form a central space to receive the removable connector, substantially as set forth."

Now, the construction which the court below gave to claim 7, here in question, makes it fully as comprehensive as either of the two rejected and canceled claims above quoted. It cannot be that such a result was intended by the office or the applicant. No construction having such effect is admissible.

Having regard to the prior art, the proceedings in the Patent Office, and the terms of the specification, I am of opinion that the proper legal construction of the seventh claim requires the presence of strips of sufficient width to "make the clasp tight," so as to secure "complete closure" or a "tight" joint, as illustrated by figures 3 and 7. Unless so limited, the claim, in my judgment, clearly is invalid for lack of novelty.

The appellants' belt fastener comprises two flattened coils of wire attached to the ends of the belt, and intermeshed and connected by a transverse wire. This construction does not form a tight joint, or admit of a complete closure of the space between the belt ends. It therefore does not, I think, embody the structure set out in the patent and defined in the seventh claim thereof. I would sustain the defense of noninfringement, and reverse the decree of the Circuit Court.