KELLEY BROS. & SPIELMAN v. DIAMOND DRILL & MACHINE CO. et al.

(Circuit Court, E. D. Pennsylvania. January 19, 1906. On Motion for.
Stay, February 1, 1906.)

No. 43.

1. EQUITY—BILL OF REVIEW—AFTER-DISCOVERED EVIDENCE.

In the case of a bill of review based upon after discovered evidence, the question of diligence is necessarily a preliminary one upon which it is not necessary to join issue by the pleadings, but which is to be considered and passed on at the time application is made for leave to file the bill, and, having been once disposed of when the bill is allowed, it will not again be considered on the final hearing.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, § 1094.]

2. PATENTS—ANTICIPATION—COIL CLASPS FOR FASTENING BELTS.

The Jackson patent, No. 433,791, for a coil clasp for fastening belts, bags, etc., in so far as it relates to belts, is void for anticipation by a similar device previously in use for many years for fastening the ends of belt conveyors in paper-making machines.

3. APPEAL—VACATION OF DECREE—POWER TO CONTINUE INJUNCTION PENDING APPEAL.

Where a decree sustaining the validity of a patent and awarding an injunction against its infringement is subsequently set aside on a bill of review and the original bill dismissed, the court has no power to continue the injunction in force pending an appeal from the later decree.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Appeal and Error, § 2207.]

In Equity. Supplemental bill in nature of bill of review. On final hearing.

For original opinion upholding the patent and finding infringement, see (C. C.) 120 Fed. 282, affirmed 123 Fed. 882, 59 C. C. A. 370; 129 Fed. 756, 64 C. C. A. 284; permission granted by Circuit Court of Appeals to reopen the case, 136 Fed. 855; and opinion on petition, in pursuance of same, for leave to file the present bill (C. C.) 138 Fed. 833.

Horace Pettit, for complainants.

W. C. Strawbridge, for respondents.

ARCHBALD, District Judge.[1]   The evidence which is now presented is the same as upon the hearing of the petition for leave to file the present bill, and as was before the Circuit Court of Appeals, when permission was obtained to reopen the case; the respondents having made no attempt to impeach or refute it. The bill as a result must be sustained, for the reasons given in allowing it to be filed, unless in the light of the argument which has been made, I find myself unable to adopt and follow the views which were then expressed.

The new evidence brought forward to invalidate the patent, which was discussed at that time, was with regard to the alleged use of a similar device for fastening together the ends of leather driving belts, by Franz J. Maier, in his Spring Bed Works at Trenton, N. J. The

[1] Specially assigned.

character as well as the use of the fastener was testified to by Maier with considerable definiteness and particularity; and he was corroborated by others who worked in the shop. But the device was only sparingly employed, and in the end was entirely abandoned, and no sample of it was therefore able to be produced. Neither was the time fixed with any great degree of certainty, being given as somewhere from 1885 to 1888, or possibly after that, although all the witnesses unite in saying that it was before the removal of the shop from Warren street, Trenton, where it was first located, which is said to have occurred in April, 1889; a date, by the way, which was that of the application for the patent in suit. The weakness of this evidence is that it rests wholly in parol, there being nothing by way of records or material exhibits to substantiate it, and the anticipating use relied upon to avoid the patent being thus made to depend on the uncertain memory of witnesses, after a long lapse of years, in which they have had no occasion to keep alive their remembrance of the occurrences testified to. This feature of the case was commented upon in the opinion allowing the present bill, but was not regarded as sufficient at that stage of the case to call for withholding assent. My hope was that further investigation on both sides would result in the evidence being either so strengthened as to leave it in no uncertainty, or so discredited as to make it altogether unreliable. I have to confess to some perplexity, now that it remains unchanged.

In the Barbed Wire Patent Case, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154, and in Deering v. Winona Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153, attention is called to the high character of proof, which is required with regard to an alleged prior use, in order to overturn a patent, it being declared that it should be established by evidence so cogent as to leave no reasonable doubt in the mind of the court as to the actual occurrence of that which is testified to. The argument employed in the first of these cases, to discredit the anticipatory use which was there set up, may also, with adaptive changes, be repeated here. For if Maier, as he states, had in successful use a device of the kind which he describes, it is certainly remarkable, that he should have applied it to the fastening together of his coil bed springs, which he forthwith proceeded to patent as something worth the while; and yet failed to do anything with it, as a belt fastener for which according to the sequel, it was particularly valuable, which he does not seem to have seen. In the latter capacity, it evidently was not a success, or it would not have been given up, thus raising the doubt whether the device was in fact the same as the one in suit; or, if not that, inducing the belief, that it was of such rudimentary and imperfect character as to stand as an unsuccessful and abandoned experiment of which the law takes no account. Moreover, if unsupported evidence, such as this, is not, according to the cases cited, to be accepted without serious reservation, when offered in the beginning, much more is it not, upon a rehearing, when the unsuccessful party is seeking to regain the place he has lost, after the proofs have been sifted and it has been found what they particularly lack.

It is possible, that, if these considerations had been given due weight at the former hearing, a different result would have been reached, although it is to be remembered, as was noted at the time, that only the prima facie character of the proofs was passed upon. I propose to say nothing further however upon this branch of the case, allowing what has been said, both then and now, to stand for what it may be worth; for I am convinced, as I was not convinced before, that there is a real and unquestionable anticipation of the patent, in the device found in paper making machines—both Fourdrinier and cylinder—for fastening together the ends of belt conveyors, employed for taking up, carrying, and draining the pulp. These fastenings, which according to the evidence have been in use anywhere from 20 to 40 years, consist in spiral coils, inserted into the spaces or apertures found in the fabric, and being intermeshed are locked together by means of an intersecting pin; thus corresponding in both form and function with the device in suit. The attempt is made to distinguish them by the suggestion, that the belts in use in paper making machines are mere conveyors, and not power belts such as those on which the fastenings in suit are employed. But the terms of the patent are general, and apply to belts of every description, the use of the device on machine or power belts being a mere adaptation, and not an independent and characterizing function. Nor even so, indeed, has it escaped challenge, as being beyond the scope of the patent, which is not thus to be controlled by it. Kelley Bros. & Spielman v. Diamond Drill & Machine Co., 123 Fed. 882, 886, 59 C. C. A. 370, Acheson, J., dissenting. Neither is any comparison to be made with the Rowat or Schpakowsky patents, which were considered at the original hearing and held not to be anticipations, so as to make what was said of them applicable here. As is there pointed out, these are belts, and not belt fasteners, and while the common construction of intermeshing coils, locked with a pin, may be employed; having regard to the result aimed at, they differ widely from anything which we have here. It is further said, however, that the open meshes of the wire cloth, used in paper machines, through which the coils are inserted, are not the same as the apertures, made for the purpose in leather belt ends, or other similar fabrics, the edges of which are to be fastened together. But here again the generality of the patent is not kept in mind, which is satisfied with a row of holes or apertures, however produced, through which the spiral coils may be inserted, "whereby"—in the terms of the patent—"strips are formed within each coil." It is finally contended, that the interlocking pin, in use in the wire cloth fasteners, is so light that it bends under the strain, and runs through the coils zigzag, thus being irremovable, and not fulfilling the patent. But this does not change the essential character of the construction, as an anticipation. All that would be necessary, to make the pin removable, would be to have it stouter, and it certainly involves no invention to enlarge or thicken this feature of the device for that purpose. Moreover, it is asserted without contradiction, that the pull of power belts is often so great as to bend the pin in exactly the same way, making it similarly unremovable. The significant thing in both devices, which causes the one to stand in the way of the other, is that, for the

purpose of conveniently fastening together the ends of the belt or fabric to be united, spiral coils are inserted into such ends, through holes substantially equidistant apart, the overlapping spaces within the coils being thus able to be brought together and intermeshed, and a pin run through to lock them. The construction in each is thus the same, as is the purpose to be accomplished, which is effected in the same manner. This character of fastening, which is shown by the numerous references, brought forward at the original hearing, from various arts, to be by no means novel, is thus proved to have been in actual use, long prior to its discovery and adaptation by the present inventor as a means of conveniently uniting belt ends, the very art by which its novelty is sought to be maintained. Here is a clear anticipation, against which it is impossible to contend and the patent, to the extent that it is overreached by it, must be declared to be invalid.

It is said, however, that, in order to be entitled to the benefit of this evidence, the parties who rely upon it were bound to show, that, in the exercise of reasonable diligence, it could not have been produced before; and that this was put in issue by the bill and answer and should therefore have been duly proved. It is no doubt true, that, before granting a rehearing, the court is to be satisfied upon this point, every party being required to bring forward, once for all, at the original hearing, all the evidence which is accessible to him, and not having the right to be heard again, except where something, calculated to change the result, has been passed by, which could not with reasonable diligence have been previously discovered and supplied. But, in the case of a bill of review, based upon after-discovered evidence, the question of diligence is necessarily a preliminary one, addressed to the court, to be considered and passed upon at the time that application is made for leave to file the bill; which will be denied, unless it appears, that the party has been diligent, and that the evidence was not fairly within his reach. 2 Dan. Chan. Prac. 1578; Dumont v. Des Moines Valley Railroad, 131 U. S. Append. clx. It is not to be left open, to come up on the hearing of the bill itself. Lewellen v. Mackworth, 2 Atk. 40; Hodges v. Mullikin, 1 Bland (Md.) 503. And having been once disposed of, when the bill is allowed, it is not necessary to go into it again.

In the present instance, not only was the question of diligence of necessity before the Court of Appeals, when application was made for leave to reopen the case, but it was also before this court, when leave to file the bill of review was given. It is true, that, in the opinion filed on the latter occasion, the ability of the complainants, with proper diligence, to have secured the evidence with regard to the alleged prior use by Maier at the Trenton Bed Spring Works was the only thing discussed; and whether the other evidence, which is now made the particular reliance of the court, was reasonably accessible, was not apparently considered or passed upon. But if the mistake was made of not doing so it will not help matters to make another. Or, if need be, going back to the question, I will say, that I am as well satisfied with regard to this, as I was with regard to the other. The use of the device in controversy, to fasten together the ends of belt conveyors in paper

making machines, was by no means an obvious one, and might well have escaped notice in the prosecution of ordinary inquiry, particularly with the prominence which has been given to and the stress which has been laid upon, the subject of power belts, which is still persisted in. The discovery, as stated by counsel was an accident, the result of a chance disclosure, which I can well believe, and there certainly has been no lack of diligence, since then in making use of it. As shown by the authorities cited above, as well as by the approved forms in use (3 Dan. Chanc. Prac. *2065, *2067), the averment of diligence found in the bill, and the denial of it made in the answer, raised, therefore, an unnecessary and immaterial issue, and counsel for the complainants committed no error in disregarding it. Some doubts on the subject, it is true, have been entertained (Story, Eq. Pl. § 420; Mitf. & Tyler, Eq. Plead. & Prac. 186; 3 Encycl. Plead. & Prac. 591), and views to the contrary expressed (Dexter v. Arnold, 5 Mason, 308, Fed. Cas. No. 3,856). But they must yield, in my judgment, to what has been otherwise directly decided. If counsel for the respondents had other ideas of the matter, and so failed at the proper time to take the steps which he would have done, to contest the claim of diligence, the only thing that could now be done would be to reopen the case and go back to that point in it, which will hardly be insisted on, considering the desire of all parties to have this litigation reach a finality.

Being satisfied, then, by the showing which has been made, that the device in suit was anticipated in the way stated, and that, by reason of this, the decree sustaining the patent is in error, and works an injustice, the same must be set aside, and a new decree entered, declaring the patent invalid to the extent that it is here relied upon, and dismissing the bill; which, under all the circumstances, will be without costs to either party.

Let a decree to that effect be prepared by counsel.

## On Motion to Stay Effect of Decree Reversing Decree in Original Suit.

As a decree reversing the decree which was entered in the original suit is about to be registered, a motion is made to stay its effect to the extent of retaining in force the injunction which was heretofore issued, pending an appeal which is to be taken to the Circuit Court of Appeals, at its approaching session. The original decree sustained the patent and found it infringed (120 Fed. 282) and awarded an injunction as the consequence, which has been operative for the last three years; and it is urged that until the case is finally determined this should not be changed. Several reasons are suggested; principally, that the coming term of the Court of Appeals is very near, that the delay entailed will at the most be but for a few months, and that, the patent having been once sustained, the effect of now giving the infringing parties a free hand will be disastrous to the business of the holders of the patent, while a continuance of existing conditions a little longer will not affect their opponents to anything like the same degree. But as I see the matter it is not a question of discretion to which these suggestions are addressed, but of power. Where a patent is sustained, and an injunction awarded by interlocutory or final order, there may be considera-

tions which should move the court to stay its hand pending an appeal therefrom; and the issuing of an injunction being more or less discretionary and the bill being still before the court, it would no doubt have the power to do this. But that is not this case. Here the former decree awarding an injunction is to be vacated, and the bill dismissed; and it is from this that the appeal is to be taken. But once the decree to this effect is entered, what is there before the court, on which to base further action; or how can the court dismiss the bill, and at the same time retain the injunction which is founded upon it? It is indeed said in Ferrand v. Hamer, 4 Myl. & Cr. 143, that a dismissal of a bill does not necessarily dissolve an injunction. But I do not see how that can well be; and it was held otherwise in Green v Pulsford, 2 Beav. 70, which certainly is the better as well as the accepted law. 16 Am. & Eng. Enc. Law (2d Ed.) 425; 10 Enc. Plead. & Prac. 1028; Blennerhasset v. Scanlan, 1 Hogan, 363; Thomsen v. McCormick, 136 Ill. 135, 26 N. E. 373; Rubon v. Stephan, 25 Miss. 253; Disbro v. Disbro, 37 How. Prac. (N. Y.) 148.

Regarding, therefore, my power over the case as gone, upon the entry of the proposed decree dismissing the former bill, and that I cannot hold onto it as I am asked to do by an attempted continuance of the injunction, the motion is refused.