BIRDSBORO STEEL FOUNDRY & MACHINE CO. v. KELLEY BROS. & SPIELMAN.

(Circuit Court of Appeals, Third Circuit. August 3, 1906.)

No. 18.

1. EQUITY—BILL OF REVIEW—DILIGENCE IN DISCOVERY OF EVIDENCE.

In case of a bill of review, based upon after-discovered evidence, the question of diligence is necessarily a preliminary one, to be considered and passed upon at the time application is made for leave to file the bill. Having been once disposed of when the bill is allowed, it will not be again considered, and a denial in the answer of the averment of diligence made in the bill raises an immaterial issue.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, § 1115.]

2. PATENTS—ANTICIPATION—COIL CLASPS FOR BELTS.

The Jackson patent, No. 433,791, for a coil clasp for uniting the ends of belts, etc., is void for anticipation, so far as it relates to belts, by a device long used in paper-making machines for uniting the ends of belt pulp conveyors.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 142 Fed. 868.

Wm. C. Strawbridge, for appellant.

Horace Pettit, for appellees.

Before DALLAS and GRAY, Circuit Judges, and HOLLAND, District Judge.

HOLLAND, District Judge. This is an appeal from a decree of the Circuit Court for the Eastern District of Pennsylvania, entered

February 1, 1906, setting aside a former decree of the said Circuit Court, and dismissing a bill of complaint in cause 49, October sessions, 1898. A bill in equity was filed in the Eastern District of Pennsylvania, October sessions, 1898, by the plaintiff, for infringement of letters patent No. 433,791 for a coil clasp. The petition was sustained, and an injunction issued against the defendants restraining them from infringing the same. (C. C.) 120 Fed. 282. Upon an appeal to the Circuit Court of Appeals of this Circuit, the decree of the lower court was sustained, and the appeal dismissed and injunction continued. 123 Fed. 882, 59 C. C. A. 370. Upon the petition of Kelley Bros. & Spielman, the Circuit Court of Appeals, on April 27, 1905, made an order permitting the petitioners to make application to the Circuit Court of the United States in and for the Eastern District of Pennsylvania to file a supplemental bill, in the nature of a bill of review, for the purposes set forth in the petition and in accordance with the prayer thereof. 136 Fed. 855, 69 C. C. A. 599. On July 5, 1905, after argument in the Circuit Court, a decree was entered and leave given the defendants to file a supplemental bill in the nature of a bill of review. 138 Fed. 833. After final hearing upon the supplemental bill, a decree was entered February 1, 1906, by the Circuit Court, setting aside the former decree and dismissing the bill of complaint in the said cause No. 49, October sessions, 1898. From this latter decree an appeal was taken to this court.

The facts are sufficiently stated in the opinion of the learned judge of the court below on the final hearing on the supplemental bill. As we agree with him in his reasoning and conclusions of law at which he arrives, as set forth in that opinion, we adopt the same as our own, which is as follows:

"The evidence which is now presented is the same as upon the hearing of the petition for leave to file the present bill, and as was before the Court of Appeals, when permission was obtained to reopen the case; the respondents having made no attempt to impeach or refute it. The bill as a result must be sustained, for the reasons given in allowing it to be filed, unless in the light of the argument which has been made I find myself unable to adopt and follow the views which were then expressed. The new evidence brought forward to invalidate the patent, which was discussed at that time, was with regard to the alleged use of a similar device for fastening together the ends of leather driving belts, by Franz J. Maier, in his spring bed works at Trenton, N. J. The character as well as the use of the fastener was testified to by Maier with considerable definiteness and particularity, and he was corroborated by others who worked in the shop. But the device was only sparingly employed, and in the end was entirely abandoned, and no sample of it was therefore able to be produced. Neither was the time fixed with any great degree of certainty, being given as somewhere from 1885 to 1888, or possibly after that, although all the witnesses unite in saying that it was before the removal of the shop from Warren street, Trenton, where it was first located, which is said to have occurred in April, 1889, a date, by the way, which was that of the application for the patent in suit. The weakness of this evidence is that it rests wholly in parol; there being nothing by way of records or material exhibits to substantiate it, and the anticipating use relied upon to avoid the patent being thus made to depend on the uncertain memory of witnesses, after a long lapse of years, in which they have had no occasion to keep alive their remembrance of the occurrence testified to. This feature of the case was

commented upon in the opinion allowing the present bill, but was not regarded as sufficient at that stage of the case to call for withholding assent. My hope was that further investigation on both sides would result in the evidence being either so strengthened as to leave it in no uncertainty, or so discredited as to make it altogether unreliable. I have to confess to some perplexity, now that it remains unchanged.

"In the Barbed Wire Patent Case, 143 U. S. 275, 12 Sup. Ct. 450, 36 L. Ed. 161, and in Deering v. Winona Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153, attention is called to the high character of proof which is required with regard to an alleged prior use in order to overturn a patent: it being declared that it should be shown by evidence so cogent as to leave no reasonable doubt in the mind of the court as to the occurrence of that which is testified to. The argument employed in the first of these cases to discredit the anticipatory use which was there set up may also, with adaptive changes, be repeated here: for, if Maier, as he states, had in successful use a device of the kind which he describes, it is certainly remarkable that he should have applied it to the fastening together of his coil bed springs, which he forthwith proceeded to patent as something worth the while, and yet failed to do anything with it as a belt fastener, for which, according to the sequel, it was particularly valuable, which he does not seem to have seen. In the latter capacity it evidently was not a success, or it would not have been given up, thus raising the doubt whether the device was in fact the same as the one in suit; or, if not that, inducing the belief that it was of such rudimentary and imperfect character as to stand as an unsuccessful and abandoned experiment, of which the law takes no account. Moreover, if unsupported evidence, such as this, is not—according to the cases cited—to be accepted without serious reservation, when offered in the beginning, much more it is not, upon a rehearing, when the unsuccessful party is seeking to regain the place he has lost, after the proofs have been sifted and it has been found what they particularly lack. It is possible that, if these considerations had been given due weight at the former hearing, a different result would have been reached, although it is to be remembered, as was noted at the time, that only the prima facie character of the proofs was passed upon.

"I propose to say nothing further, however, upon this branch of the case, allowing what has been said, both then and now, to stand for what it may be worth; for I am convinced, as I was not convinced before, that there is a real and unquestionable anticipation of the patent, in the device found in paper-making machines—both Fourdrinier and cylinder—for fastening together the ends of belt conveyors, employed for taking up, carrying, and draining the pulp. These fastenings, which according to the evidence have been in use anywhere from 20 to 40 years, consist in spiral coils inserted into the spaces or apertures found in the fabric, and, being intermeshed, are locked together by means of an intersecting pin; thus corresponding in both form and function with the device in suit. The attempt is made to distinguish them by the suggestion that the belts in use in paper-making machines are mere conveyors, and not power belts, such as those on which the fastenings in suit are employed. But the terms of the patent are general, and apply to belts of every description; the use of the device on machine or power belts being a mere adaptation, and not an independent and characterizing function. Nor even so, indeed, has it escaped challenge as being beyond the scope of the patent, which is not thus to be controlled by it. Kelley Bros. & Spielman v. Diamond Drill & Machine Co. (C. C.) 123 Fed. 382, 59 C. C. A. 370, Acheson, J., dissenting. Neither is any comparison to be made with the Rowat or Schpakowsky patents, which were considered at the original hearing and held not to be anticipations, so as to make what was said of them applicable here. As is there pointed out, these are belts, and not belt fasteners, and while the common construction of intermeshing coils, locked with a pin, may be employed, having regard to the result aimed at, they differ widely from anything which we have here. It is further said, however, that the open meshes of the wire cloth, used in paper machines, through which the coils are inserted, are not the same as the apertures, made for the pur-

pose in leather belt ends, or other similar fabrics, the edges of which are to be fastened together. But here, again, the generality of the patent is not kept in mind, which is satisfied with a row of holes or apertures, however produced, through which the spiral coils may be inserted, 'whereby'—in the terms of the patent—'strips are formed within each coil.'

"It is finally contended that the interlocking pin, in use in the wire cloth fasteners, is so light that it bends under the strain and runs through the coil zig-zag, thus being irremovable, and not fulfilling the patent. But this does not change the essential character of the construction as an anticipation. All that would be necessary to make the pin movable would be to have it stouter, and it certainly involves no invention to enlarge or thicken this feature of the device for that purpose. Moreover, it is asserted, without contradiction, that the pull of power belts is often so great as to bend the pin in exactly the same way, making it similarly unremovable. The significant thing in both devices, which causes the one to stand in the way of the other, is that, for the purpose of conveniently fastening together the ends of the belt or fabric to be united, spiral coils are inserted into such ends, through holes substantially equidistant apart, the overlapping spaces within the coils being thus able to be brought together and intermeshed, and a pin run through to lock them. The construction in each is thus the same, as is the purpose to be accomplished, which is effected in the same manner. This character of fastening, which is shown by the numerous references brought forward at the original hearing from various arts to be by no means novel, is thus proved to have been in actual use long prior to its discovery and adaptation by the present inventor as a means of conveniently uniting belt ends, the very art by which its novelty is sought to be maintained. Here is a clear anticipation, against which it is impossible to contend, and the patent, to the extent that it is overreached by it, must be declared to be invalid.

"It is said, however, that in order to be entitled to the benefit of this evidence, the parties who rely upon it were bound to show that in the exercise of reasonable diligence it could not have been produced before, and that this was put in issue by the bill and answer, and should therefore have been duly proved. It is no doubt true that before granting a rehearing the court is to be satisfied upon this point; every party being required to bring forward, once for all, at the original hearing, all the evidence which is accessible to him, and not having the right to be heard again, except where something calculated to change the result has been passed by which could not with reasonable diligence have been previously discovered and supplied. But, in the case of a bill of review based upon after-discovered evidence, the question of diligence is necessarily a preliminary one, addressed to the court, to be considered and passed upon at the time that application is made for leave to file the bill, which will be denied, unless it appears that the party has been diligent and that the evidence was not fairly within his reach. 2 Dan. Chan. Prac. 1578; Dumont v. Des Moines Valley Railroad, 131 U. S. Append. clx, 25 L. Ed. 520. It is not to be left open, to come up on the hearing of the bill itself. Lewellyn v. Mackworth, 2 Atk. 40; Hodges v. Mullikin, 1 Bland (Md.) 503. And having been once disposed of, when the bill is allowed, it is not necessary to go into it again. In the present instance not only was the question of diligence of necessity before the Court of Appeals when application was made for leave to reopen the case, but it was also before this court when leave to file the bill of review was given. It is true that in the opinion filed on the latter occasion the ability of the complainants, with proper diligence, to have secured the evidence with regard to the alleged prior use by Maier at the Trenton Spring Bed Works was the only thing discussed; and whether the other evidence, which is now made the particular reliance of the court, was reasonably accessible was not apparently considered or passed upon. But, if the mistake was made of not doing so, it will not help matters to make another. Or, if need be, going back to the question, I will say that I am as well satisfied with regard to this as I was with regard to the other. The use of the device in con-

troversy, to fasten together the ends of belt conveyors in paper-making machines, was by no means an obvious one, and might well have escaped notice in the prosecution of ordinary inquiry, particularly with the prominence which has been given to, and the stress which has been laid upon, the subject of power belts, which is still persisted in. The discovery, as stated by counsel, was an accident, the result of a chance disclosure, which I can well believe, and there certainly has been no lack of diligence since then in making use of it. As shown by the authorities cited above, as well as by the approved forms in use (3 Dan. Chanc. Prac. 2065, 2067), the averment of diligence found in the bill, and the denial of it made in the answer, raised, therefore, an unnecessary and immaterial issue, and counsel for the complainants committed no error in disregarding it. Some doubts on the subject, it is true, have been entertained (Story, Eq. Pl. § 420, Mitf. & Tyler, Eq. Plead. & Prac. 186. 3 Encycl. Plead. & Prac. 591) and views to the contrary expressed (Dexter v. Arnold, 5 Mason, 308, Fed. Cas. No. 3,856). But they must yield, in my judgment, to what has been otherwise directly decided. If counsel for the respondents had other ideas of the matter, and so failed at the proper time to take the steps which he would have done to contest the claim of diligence, the only thing that could now be done would be to reopen the case and go back to that point in it, which will hardly be insisted on, considering the desire of all parties to have this litigation reach a finality.

"Being satisfied then, by the showing which has been made, that the device in suit was anticipated in the way stated, and that, by reason of this the decree sustaining the patent is in error, and works an injustice, the same must be set aside, and a new decree entered, declaring the patent invalid to the extent that it is here relied upon, and dismissing the bill, which, under all the circumstances, will be without costs to either party. Let a decree to that effect be prepared by counsel."

The decree of the Circuit Court is affirmed.