MAUD M. BELL *v.* THE VIAVI COMPANY, a corporation of the State of California, and GUY BELL *v.* THE VIAVI COMPANY, a corporation of the State of California.

(*March 28, 1929.*)

PENNEWILL, C. J., and RODNEY, J., sitting.

*E. Ennalls Berl* for plaintiffs.

*Henry R. Isaacs* for defendant.

Superior Court for New Castle County, Nos. 29 and 30, January Term, 1928.

PENNEWILL, C. J., delivering the opinion of the court:

In the above stated cases the court, sitting in Banc, found that the defendant was doing business in this state in such manner as to make it amenable to the laws of this state. The defendant now moves that the case be reopened, so that alleged after-discovered evidence may be introduced which would show that the defendant was not doing business in this state and that the opinion of the court, was, therefore, erroneous.

The evidence sought to be introduced is an agreement dated February 20, 1900, between the Viavi Company, a co-partnership subsequently incorporated under the same name, and F. E. Marsh & Co., a corporation, the name of which was later changed to Eastern Viavi Company.

In support of the motion, it is claimed that said agreement will convince the court that the relation existing between the two companies was that of buyer and seller and not of principal and agent. From the testimony produced at the previous hearing the court found the relation to be that of principal and agent, and upon that fact based its opinion that the defendant was doing business in this state by and through the Eastern Viavi Company.

There are two objections made to defendant's motion:

First, It does not appear the defendant could not by the exercise of reasonable diligence have discovered the agreement, that is, the evidence now sought to have admitted and considered by the court.

Second, That such evidence, had it been discovered and produced at the hearing, would not have established the relation contended for by the defendant, but on the contrary would have more clearly shown the fact that the relation between the two companies was that of principal and agent, and, therefore, that the defendant was doing business in this state.

It is unnecessary to cite any authorities in support of plaintiff's first proposition, viz.: That the court will not ordinarily reopen a case for the admission of after-discovered testimony that might, by the exercise of reasonable diligence, have been produced at the hearing.

We will, however, mention two well-considered cases that support the proposition: *Eclipse Machine Co. v. Harley-Davidson Motor Co. (C. C. A.)*, 286 *F.* 68; and *Birdsboro Steel Foundry & Machine Co. v. Kelley Brothers & Spielman (C. C. A.)*, 147 *F.* 713.[1]

It cannot be claimed by the defendant that the evidence proposed to be introduced was not available at the time of the hearing

---

[1]See, also, *Bringhurst v. Harkins*, 2 *W. W. Harr.* (32 *Del.*) 324; *Joyce v. The State*, 3 *W. W. Harr.* (33 *Del.*) 490.

because it was known to the defendant, it was a part of its own records and easily obtainable. It may be that it did not occur to the defendant, at the time, that it was necessary to produce the "agreement" in evidence, but that could make no difference.

While defendant's failure to produce the evidence at the hearing is a good and sufficient reason for refusing the motion to reopen the case the Court prefer not to rest its decision on this ground, which is technical and aside from the merits, if there is a substantial ground upon which the refusal can be based. We are convinced there is such a ground and it is this:

The alleged after-discovered evidence, urged as a reason for a rehearing, is not inconsistent with the court's decision. If such evidence had been considered at the hearing, together with the other evidence, the court could not have reached any different conclusion. What is the new evidence now relied on?

It is, as already stated, an agreement, or contract, dated February 20, 1900, between the Viavi Company, and F. E. Marsh & Co., a corporation whose name was subsequently changed to Eastern Viavi Company. Certain addenda are also filed with the agreement in support of defendant's motion, but we assume that it is upon the agreement alone the defendant relies because nothing else in the nature of evidence is specifically mentioned.

It is not necessary to quote the entire agreement which is very long. No good purpose would be served by stating all of its provisions. ██ In the agreement the defendant is often mentioned as the seller and the Eastern Viavi Company as the buyer, but it is not claimed that such designation establishes the legal relation of the companies. The real question is, not what the parties called themselves, but what the legal effect of the agreement is when considered as a whole.

In this connection the language employed by Chief Justice Gilpin in *Geylin v. De Villeroi*, 2 *Houst*. 311, is of special significance:

"There is no special character or description of written instrument, nor any particular form of words, necessary to the appointment of an agent. The modes of appointment are various, and the agency may be created either by

express words, or acts, of the principal, or it may be implied or inferred from the circumstances and conduct of the parties. * * * The fact of agency, of either description, may be established, either by direct or indirect evidence. It may be shown directly, by express words of appointment, either spoken or written. Or, it may be implied or inferred, or indirectly shown, by evidence of the relative situation of the parties, the nature of the business which is the subject of controversy, and the character of the intercourse between them, provided the facts and circumstances disclosed by the evidence, fairly justify such an inference. The acts and doings of the party sought to be charged as principal, in relation to the subject matter, may be, and often are, quite as expressive and significative as words spoken."

Equally pertinent is the following excerpt from *Section* 48 of *Mechem on Agency*:

" * * * Not by the name which the parties have seen fit to apply to their contract, but by its true nature and effect. The essence of sale is the transfer of the title to the goods for a price paid or to be paid. Such a transfer puts the transferee, who has obtained the goods to sell again, in the attitude of one who is selling his own goods, and makes him liable to the person from whom he received them as a debtor for the *price* to be paid and not liable as an agent for the *proceeds* of the re-sale. The essence of agency to sell is the delivery of the goods to a person who is to sell them, not as his own property, but as the property of the principal, who remains the owner of the goods and who, therefore, has the right to control the sale, to fix the price and terms, to recall the goods and to demand and receive their *proceeds* when sold, less the agent's commission, but who has no right to a *price* for them before sale or unless sold by the agent. In doubtful cases the courts, in endeavoring to extract the meaning, will incline against the party whose mixed motives or ambiguous language has caused the uncertainty, where such a course is demanded for the protection of innocent persons against whom the contract is sought to be enforced."

Tested by these well-settled principles of law, what is the nature and effect of the agreement relied on by the defendant? Without referring to its different paragraphs specifically, we will mention certain provisions which indicate the real purpose of the Viavi Company in its contract with the Eastern Company:

The Viavi Company, the defendant, "grants to the second party the right of sale of the above remedies in the above-mentioned territory."

Should the "first party advance retail selling prices, the prices hereinafter named shall increase and bear the same relation to advanced retail selling prices fixed from time to time as prices named below bear to present retail selling prices."

A list of articles billed to the second party "shall vary in selling prices to the second party at the option of the first party, without change of retail prices."

Another provision of the contract requires the Eastern Company to furnish to the Viavi Company detailed weekly reports of sales of each remedy made in the territory, and of stocks on hand and to be needed in the future.

The Viavi Company is to regulate the advertising methods and matter of the Eastern Company.

The retail prices of the articles from the Viavi Company "shall be fixed from time to time by the said party of the first part and no right to change the retail prices is granted to the second party by this contract."

In order to retain its territory the Eastern Company is required to purchase from and pay to the Viavi Company each year, for sale to agents and consumers, a certain amount of merchandise.

The contract further provides that the Eastern Company must not handle any goods other than those of the Viavi Company, and that it "shall be governed in the method of doing business and advertising and all matters connected with the sales of said remedies by the rules and plans adopted or advised by the first party." And the Eastern Company is required "to devote its exclusive time and attention to the business herein created and contemplated by this agreement and no other."

Perhaps the most significant part of the contract, and no doubt the most important to the Viavi Company, was the provision "that the first party shall not be held responsible  *  *  *  for any liability that may attach to the second party, or to the business herein described, and contemplated, by reason of the customs, ordinances or laws hereafter enacted or now in force in said territory."

This provision seems like an attempt on the part of the Viavi Company to retain all the benefits and escape all the liabilities that might result from a sale of its products in the territory allotted to the Eastern Company.

Taking the contract as a whole and giving to its different provisions their proper construction and real intent, we feel constrained to hold, under the law that is well settled, that the contract does not convince the court that the relation existing between the Viavi Company and the Eastern Viavi Company was, at the time of the

making of the agreement, that of buyer and seller. There is much in the instrument that indicates the relationship of principal and agent, and nothing that negatives such a relation except the words buyer and seller or synonymous words. But such words in themselves mean but little when the entire instrument shows a different meaning and intent. Certainly, under a reasonable construction of the contract, the Eastern Company was not an independent buyer and seller. It was hedged about with too many restrictions and burdened with too many responsibilities to the Viavi Company, in the conduct of its business and the disposal of its products, to warrant any different conclusion. We think the contract does not disprove that the Eastern Company was the agent of the Viavi Company in the sale of its products in a certain territory, and it being admittedly the only evidence that would be offered to convince the court that its former opinion was erroneous, we feel bound to refuse defendant's motion for a rehearing.

There is another reason holding that the agreement relied on would be unavailing even if it did show that the relationship between the parties was that of buyer and seller, and not principal and agent; viz.: It would speak only as to the time the agreement was executed and continued in force.

The opinion of the court given on the motion to vacate the return of process was based on acts, conduct, and admissions by advertisement and otherwise, showing that the relation between the Viavi Company and the Eastern Company was that of principal and agent. Those acts and admissions occurred in recent times and long after the making of the contract now relied on. So that, if the contract could be given the legal effect contended for the subsequent and recent acts of the defendant clearly show that it was disregarded and relation between it and the Eastern Company was that of principal and agent.

The motion is, therefore, refused.