DIAMOND DRILL & MACHINE CO. v. KELLY BROS. (No. 1.)

(Circuit Court, E. D. Pennsylvania. December 27, 1902.)

No. 49.

1. PATENTS—CONSTRUCTION OF CLAIMS—EFFECT OF AMENDMENT IN PATENT OFFICE.

The scope of the claims of a patent is not restricted by verbal changes made to meet objections of the patent office that the claims did not clearly define the construction intended, and without abandoning any of the essential features claimed for the invention and described in the specification.

2. SAME—ANTICIPATION—PRIOR PATENT AS EVIDENCE.

Where the question is one of anticipation, the date when the alleged anticipating patent was issued controls, and the defendant cannot be permitted to show that the invention described in the prior patent was made prior to the date of such patent. That is admissible only where the issue is who was the original and first inventor, which is entirely different. Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68, followed. Barnes Automatic Sprinkler Co. v. Walworth Mfg. Co., 60 Fed. 605, 9 C. C. A. 154, distinguished.

3. SAME—SUIT IN EQUITY FOR INFRINGEMENT—OBJECTION TO EVIDENCE.

In a suit in equity for infringement of a patent, the question of the relevancy as well as the legal effect of evidence is necessarily reserved until the final hearing, and the failure to object to its introduction does not preclude an objection to its relevancy on the hearing.

4. SAME—INFRINGEMENT—BELT FASTENING.

The Jackson patent, No. 433,791, for a coil clasp for fastening belts, etc., claim 7, construed, and *held* not anticipated, valid, and infringed.

In Equity. Suit for infringement of letters patent No. 433,791, for a coil clasp, granted August 5, 1890, to Calvin Jackson. On final hearing.

Wm. C. Strawbridge, for complainant.

Horace Pettit, for respondents.

ARCHBALD, District Judge.* The patent in suit was issued to Calvin Jackson, August 5, 1890, for a coil clasp; the object of the invention being declared to be "to provide a simple, cheap, and efficient clasp for mail bags, boots and shoes, gloves, trunks, valises and traveling bags, grain bags, corsets, belts, and for similar uses." Its application to machine belts is that which has proved most general and effective, and is the one with which we have to deal in the present case. Stated in broad terms, as it appears in the specifications, the clasp consists in two spiral coils of wire, screwed into equidistant holes in the opposite ends of the material to be united; the coils being then brought together until they intermesh, and a pin run through the interlocking spaces to fasten them. Right and left hand coils are spoken of in some of the claims, and, according to the specifications, are preferably to be used, but the inventor expressly declares that he does not limit himself to them. He also says that "the coils, after being fastened, may, if desired, be pressed into various shapes, so that a cross-section * * * would show an oval, oblong, or other form, as may be required."

* Specially assigned from Middle District.

The seventh claim, which is the one particularly relied upon, is as follows:

"The combination with the belt, bag, or other article having ends or edges to be connected, said edges each having a row of apertures, of individual spiral coils, extending through said apertures, whereby strips are formed within each coil, and a rod to be passed through and removed from the space formed by the overlapping portions of the said coils, substantially as set forth."

The defendants are manufacturing machine belt clasps composed of spiral coils that intermesh and are fastened with an interlocking pin, apparently infringing on this claim. The fact that the spirals used are not rights and lefts is immaterial, nothing being said upon that subject in this claim, however it may be in others; and, even if it were, it is a question whether, in view of what is said in the specifications, any of them would be so limited. Neither are the defendants' coils to be distinguished because, after being inserted in the belt ends, they are flattened down; the inventor, as we have just seen, expressly declaring that the coils, after having been set, may be pressed into various shapes. Equally futile is it to seek to confine the clasp to ladies' belts, excluding those used in machinery. "Belts," in broad terms, are spoken of; and there is nothing to suggest that only those worn by ladies were intended, except that corsets are mentioned in the same connection. But so are mail bags, grain bags, trunks, and valises. The word is sufficiently comprehensive to embrace belts of every character, ladies' belts, if any, being the most doubtful; it being difficult to see how an intermeshing double coil fastened with a pin could afford them anything either useful or ornamental.

But it is earnestly contended that, in order to infringe the particular claim relied upon, the two ends of the belt must extend into the coils far enough to make a complete closure, which is not the case in those manufactured by the defendants. The strips of which the claim speaks, it is argued, are not incidental, but for a purpose; that purpose being to effect a closing up of the two ends of the belt, as an essential part of the invention. Attention is called in this connection to the specifications, where it is stated:

"By having the holes * * * a proper distance from the edges, * * * a strip of leather or other fabric will be formed within each coil. These strips are very important, as they make the clasp tight, so that, when applied to a bag or other receptacle, a complete closure may be effected."

But that is not all that is said upon the subject. With regard to these strips, the inventor, as the specifications and drawings plainly show, had three possible constructions in mind. "In some cases," he declares in a previous paragraph, "I allow the edge of the belt or other material to which the clasp is applied to project some distance into the spiral, so that it may overlap the adjoining spiral when the clasp is united, as shown in Fig. 3. In other cases I allow the adjoining edges of the leather or fabric to lie in the same plane, as shown in Fig. 5, when the connecting wire * * * will also be inserted in the two spirals, so as to lie in the same plane with the leather or fabric united." Later on, where the strips are declared to be of importance in effecting a complete closure, reference is made

to Fig. 7 as particularly displaying this construction; and while, in the same connection, there is again a reference to Fig. 3, there is no such reference to Fig. 5,—a discrimination which is significant. In addition to this, in Fig. 4 we actually have an open construction exhibited. These figures are as follows, and explain themselves:

Furthermore in the sixth claim there is an express provision that the space between the coils shall be "practically closed, and a tight joint formed," which shows that, when the inventor intended to adopt that feature, he said so; and, inasmuch as there is no difference except this between the sixth and seventh claims, if the construction which is contended for is imposed upon the latter we shall have the one duplicating the other, which is to be avoided if it can be. While, then, it is, no doubt, true that strips formed within each coil are an essential feature of the claim in suit, so that there would be no infringement where they did not exist, yet that the strips must be wide enough to meet and close the joint is not stated, and cannot be made a part of the claim without reading into it what is not there. A sufficient purpose for them may be found in the fact that they tend to prevent the coils from tearing out; but, even without attempting to assign any such particular object, there is nothing incomplete or ambiguous in the claim as it stands, requiring us to go into the specifications to make it clear. I by no means concede that, if we did, we should be compelled to adopt the construction contended

for by the defendants; and, on the contrary, I think we should not, as I have endeavored to show. But the claim is satisfied if strips are formed within the coils, whatever be their width, and that is all we need to know.

Neither is this result disturbed by the course of the application through the patent office. To make that of any concern, it must appear that the claim was narrowed to its present form in response to objections made by the examiner. In the first application presented by the inventor, the claims were all very broadly, if not indefinitely, stated, and were rejected on the strength of the Pickhardt belting (1882) and the Walker belt· fastener (1869). The applicant amended, and, in the accompanying argument, suggested that the Pickhardt was a wire fabric, and so not relevant, and that in the Walker the belt fastening was simply a hinge,—a fair criticism, and, to a certain extent, apparently convincing, as they were not brought up afterwards. But the invention was a second time rejected; the fourth claim, which is said to be a rudimentary form of the present seventh, being declared to present no tangible or merchantable article; and that, as well as the others, being held to be anticipated by the Schpakowsky belting (1873). Thereupon they were all again remodeled into what is practically their present form, the specifications being also amended by· the insertion of the paragraph which is the subject of controversy. The Schpakowsky was differentiated in several ways in the accompanying argument; it being declared, among other things, that the strips within the coils effectually closed the mouth of the bag (the only article mentioned), as shown by the accompanying exhibits. This resulted first in an allowance by the examiner, and then a withdrawal and rejection on a newly discovered reference,—the Rowat (English) belting (1872). An argument against this reference followed, and a reply by the examiner, criticising all the claims except the second, and stating with regard to the sixth and seventh that the words "strips," there used, failed "to clearly define the construction referred to." Some slight verbal changes were then made, and after a personal interview with the examiner the application went through. From this review of the record, it cannot be successfully maintained that the reference to the strips formed within the coils in the seventh claim was inserted to distinguish it from the other alleged anticipating inventions on which it had been rejected, nor yet to overcome any particular objection raised by the office. All that can be said was that it was accepted and passed in its present form after the arguments and emendations which we find. Assuming, as suggested, that the fourth claim in the second application was the original of the present seventh, the specific objection to it was that it did not present anything tangible or merchantable, and it was to overcome this that it was recast into its present form. It is also true that it was met by the general objection, along with the other claims, that it was anticipated by the Schpakowsky; and it was at this juncture that the paragraph with reference to the effect in certain cases of the strips formed within the coils was inserted in the specifications. But side by side with this paragraph was the other, which was still allowed

to remain, in which the three different arrangements already alluded to were recognized, in one of which the edges project into the coil so as to lap over, in one of which they abut, and in the other simply lie in the same plane. There was no abandonment of this part of the specifications by the introduction of the other, and establishing, as it does, that the closed construction, while applicable in some cases, was not expected in all, it must be regarded as qualifying and limiting the other to that extent. No substantial amendment was called for after this; the examiner being apparently convinced that the references on which he had relied were not applicable, as they certainly were not. Even his suggestion that the word "strips," in the sixth and seventh claims, did not clearly define the construction intended, was not insisted upon. There were a few verbal changes, and that was all. I fail to see that in any of this the applicant was required to do more than define and clear up his claims, reducing them from their original vagueness to something specific and definite, without abandoning the essential features which are now contended for. As is well said in Société Anonyme Usine J. Cleret v. Rehfuss (C. C.) 75 Fed. 657: "An estoppel is not to be implied from circumstances of doubtful import;" and that, as it seems to me, is the most that we have here. Unquestionably, the applicant is held to the effect of changes on the strength of which he gets his patent, but this cannot be predicated of a mere restatement or remodeling of the claims, without any material recession.

On the question of anticipation, it must be conceded that it was not new to intermesh opposing coils, and fasten them with a pin inserted in the interlocking spaces, nor yet to run a spiral coil through a row of apertures, and it did not need the numerous references introduced by the defendants to prove this. But that is not all with which we have to deal. The plaintiffs claim a combination of these particular features to produce a new and useful result in the way of a belt fastener, and, unless they appear to have been already so appropriated or applied, they constitute a patentable invention. Many of the references relied on may be disposed of with a word. The Mosman (1869) has to do with a new method of inserting wire coil around the edges of lamp deflectors; the Garland (1883) is for a bag-sewing machine; the Keep (1886), for a pen rack; the Webster (1886), for an overedge sewing machine; and the Lindley (May, 1889), for a julep strainer. It is difficult to see the value of either of these for the purposes of this case. The only possible relevancy of the Garland and the Webster is that each employs spiral needles, which coil their way through the material to be sewed together, while the Mosman, the Keep, and the Lindley simply show what has already been conceded,—that it was not new to run a coil of wire through a line of holes. Furthermore, the Lindley is later than the patent in suit, and so entirely immaterial; being in this respect like the Sherman belt fastener, also referred to, which, although granted in December, 1889, on an application in September of the same year, is subsequent, as an anticipation, to the present patent, which was applied for in April, 1889, although not granted until August of the next year. The same is also true of the Maier bed-spring fast-

ener, patented May 13, 1890, of which much is made, and which may as well be disposed of in this connection. Aside from its date, it is not an anticipation, in my judgment; simply making use, as it does, for quite a different purpose, of interlocking coils fastened with a pin. But however that may be, its date is against it here. Where the question is one of anticipation, the date when the alleged anticipating patent was granted is what controls. This was decided in Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68, where, speaking to this question, it is said:

"Neither the defendant in an action at law, nor a respondent in an equity suit, can be permitted to prove that the invention described in the prior patent * * * was made prior to the date of such patent, * * * for the reason that the patent * * * can only have the effect as evidence that is given to the same by the act of congress."

In this respect it is put by the statute on the same footing as a printed publication disclosing the invention, which cannot be known until it has been given to the public by being issued. It is true that the defendant in such a suit may plead and show, as the statute provides, that the patentee was not "the original and first inventor or discoverer of any material and substantial part of the thing patented"; and it is also true that the answer in the present instance sets up this defense, as well as all the others which the statute allows, alleging that the invention was known to and used by each of the patentees named in the several patents cited as anticipations, and was in public use and on sale by each of them more than two years prior thereto. Wholesale pleading of this kind does not commend itself, although it may not be unusual; but, entirely aside from that, it does not control the issues made by the proofs. The defense that the patent has been anticipated is one thing, and that the patentee was not the original inventor is quite another, and the proofs bearing on each are equally separate and distinct. In the present instance, as between the Maier patent and the one in suit, we have, at most, the same principle applied to different subjects,— a bed spring and a belt fastener. It may be that the one which was patented first would be held to anticipate the other, although, as I have indicated, that is not my view; but it could not be said that either patentee, as against the other, was or was not the first inventor. In accordance with this, not one word has been offered to show that Maier was the original discoverer of this belt clasp, any more than that he or any one else ever made any prior use of it; and, whatever be the allegations of the answer, that is not what is really contended for. He patented one device, and Jackson another, and each, so far as the other was concerned, was first in his own line. The only question raised is whether Maier's patent, assuming that it would negative the novelty of the Jackson, was prior in date of issue. It is clear that it was not, and that is the end of it. The case of Barnes Automatic Sprinkler Co. v. Walworth Mfg. Co., 9 C. C. A. 154, 60 Fed. 605, is not at variance with this view, because the issue there was who was the real inventor of the very invention in suit, which is entirely different. It is urged that no objection was made when the Maier file wrapper was offered, and that none, in

consequence, can be made to it at this time. But in equity the relevancy, as well as the legal effect, of the proofs, is necessarily reserved until the final hearing, and the failure to oppose its introduction does not, therefore, preclude an objection now.

The other references given are the Walker (1869), the Rowat (British, 1872), the Schpakowsky (1873), the Du Bois (1873), and the Fontneau (1884). These do not need to engage us much longer than the others. The Walker is for an improved belt joint, consisting of thin metal plates set opposite each other on either side of the belt ends to be united, and fastened by rivets or screws. This is advanced by the inventor as an improvement on what he calls the "ordinary hinge joint," a modification of which he illustrates in his first figure. By mistake the construction presented in this figure seems to have been taken as the invention itself, both by counsel and experts, led on by the patent examiner; and a display model of it has accordingly been exhibited as part of the proofs. But neither this figure, nor the patent itself, is an anticipation. There is no approach in either to the one in suit; the only resemblance in the hinge-joint figure being that the hinges which make up the joint are fastened like the leaves of any other hinge,—by a pin run through their loops or eyes. The Rowat is for an improved flexible metallic web for "conveying or carrying materials, or for window shutters, or other similar purposes"; its ability to be used for belts being also recognized. It is made up of sets of spiral coils of wire, flattened and intermeshed, and then fastened with a pin. While it is true that each set of spirals is interlocked with the next, similarly to the belt clasp in suit, yet there is such a wide difference in the result aimed at and attained in the two cases that they must be regarded as entirely separate and distinct. The most that can be charged is that the means employed in the present clasp is the same, in a general way, as that by which the structure of the web is made up, but that the one in any sense suggests or anticipates the other cannot be maintained. The Schpakowsky is almost identical with the Rowat, and the same may be said of it. Both are utterly impracticable devices for belting, as the complainants' experiments abundantly prove; and neither of them avails as a reference against the patent in suit, as the patent examiner, although at first relying on them, was led to conclude. The Du Bois is for an improvement in tools to effect the lacing of belts. This lacing the inventor declares is preferably to be accomplished by the use of metal wire, to be run through holes in the belt, and the invention consists in a machine to hold the ends of the belt while this is being done. By the means suggested, the belt is virtually sewed together, wire being used instead of a thread or thong. The resemblance in this to anything which we have here is of the remotest kind. It might just as well be argued that the thongs or lacing by which belts have heretofore been fastened were an anticipation, as that this was. The Fontneau is the only one left. It is for a tubular metal fabric, supposed to be suitable for bracelets and other jewelry. It seems to have been brought forward simply because, like some of the other things referred to, it is made up of intermeshed spiral coils fastened with a pin. As al-

ready stated, the general construction employed in it is admittedly not new, but its application in a new way to new and useful purposes is not thereby prohibited. The two arts, as well as the two instances, are distinct, and it is only by a strained comparison that they can be brought together. There is nothing in it, or in any of the other patents referred to, which amounts to an anticipation, and the patent must therefore be sustained.

Let a decree be drawn in the usual form in favor of the plaintiffs, referring the case to a master to take an account.