DIAMOND DRILL & MACHINE CO. v. KELLY BROS. (No. 2.)

(Circuit Court, E. D. Pennsylvania. January 6, 1903.)

· No. 7.

**1. PATENTS—INVENTION.**

A literal mechanical correspondence is not necessarily an anticipation. The principles of mechanics are always the same, and, in the almost endless combinations of them possible, it is not to be expected that duplications will not occur. Where they appear, the question is whether the new use is so closely analogous as to have been presumably brought about by what had preceded it, or is so remote and different that the result cannot be ascribed to mere suggestion. Stated in another form, it may be said that, while the mere mechanical adaptation of an old device to an analogous use is not invention, a new application in a different one whereby a new and distinct result is produced, will be.

**2. SAME—CLAIMS—CONSTRUCTION.**

In a patent for a machine for making and inserting wire-coil clasp fasteners for belt ends, the words, "in a wire-coil machine, substantially as described," found in a claim, carry nothing into the claim which is not specifically enumerated there, either for the purpose of narrowing it to avoid anticipation, or broadening it to make out infringement.

**3. SAME—IDEA NOT PATENTABLE—INFRINGEMENT—EQUIVALENTS.**

An idea is not patentable, but only the particular mechanical combination for bringing it about. This includes all substantial equivalents, but not every other method imaginable. There must be some reasonable correspondence, not only in the function performed, but in the way by which it is done, to establish an equivalency. A mere similarity in result is not enough.

**4. SAME—INFRINGEMENT—MACHINE FOR MAKING AND INSERTING WIRE COILS.**

The Jackson patent, No. 482,965, claim 2, for a machine for making and inserting wire coils as fastenings for belts, etc., construed, and *held* not anticipated, and valid, but not infringed.

In Equity. Suit for infringement of letters patent No. 482,965, granted September 20, 1892, to Calvin Jackson, for a method of, and apparatus for, coiling and inserting wire. On final hearing.

Wm. C. Strawbridge, for complainant.

Horace Pettit, for respondents.

ARCHBALD, District Judge.* In a suit between the same parties, just decided (120 Fed. 282), the patent of Calvin Jackson for a coil clasp belt fastener has been sustained. The present proceedings have to do with a machine for making and inserting such coils, patented by the same party September 20, 1892 (No. 482,965). As de-

* Specially assigned.

scribed by the inventor, the machine consists, in substance, of two or more peripherally grooved rollers, journaled in a frame made up of a fixed and a movable part, hinged together; the rollers being simultaneously rotated by means of intermeshing gears, and being so located with reference to each other and the frame in which they are set as to form an intermediate space, in which the coil is operated. There are one or two modified forms of this, but none that we need to notice. It is essential to the efficient working of the machine that the upper half of the frame should be capable of being lifted away from the lower,—this being necessary to regulate the size of the coils to be formed, to allow the fabric in which a coil is to be inserted to be laid in place, and to adjust the clamping plates to different thicknesses of material and sizes of coils, so that pressure may be brought at the same time upon both; and, in order to keep the rolls in gear while this is being done, an intermediate gear-wheel is provided, which is pivoted at the hinging point of the two frames. Different forms of the machine are shown in section in the following diagrams:

To form a coil, the end of the wire out of which it is to be made is given one or more turns around a proper-size mandrel placed between the rollers, and, being forced forward by their pressure and rotary motion, is made to coil its way in a spiral track between the successive grooves of the upper and lower rollers; these grooves being set a little in advance of each other, according to the pitch of the spiral desired. Where the coil is to be inserted into other material, such as a belt or bag, the upper frame is raised on the hinge, and the fabric laid in between clamping plates, which hold it in place, when the frame is lowered; and, the edge of the fabric being made to extend into the space between the rollers in which the coil revolves, the coil is forced through it by their motion. According to the suggestion of the inventor, the coil may be made and inserted at one and the same time, or the two operations may proceed separately. The defendants are manufacturing a machine for inserting wire coils (but not making them), made up of similarly placed and similarly operating rollers geared together; but they deny that they have infringed the plaintiff's patent, and they further contend that it is void for want of novelty. The particular features of the patent which are drawn in controversy are embodied in the second claim, which is as follows:

"(2) In a wire-coil machine, substantially as described, the combination with one or more rollers supported in a fixed frame, of one or more similar rollers supported in a movable frame pivoted to the fixed frame, said rollers being geared with a gear-wheel, having its center at said pivotal point, substantially as set forth."

Taking up first the question of anticipation, some of the references are remote and inconsequent, and none of them is convincing. The Mosman (1869) is a tool for putting a coil around the edge of a lamp deflector, which is all that need be said of it. The Garland (1886) is a bag-sewing machine, in which the thread is carried by a tapering spiral needle, rotating between three grooved conical rollers, the lower two of which are set in a fixed frame, and the upper one in a movable frame, pivoted to it; all being tapered oppositely to the needle. If literalness be adhered to, points of similarity can be found between this and the patent in suit. Objection is made on the one hand that the coil tapers, and on the other it has been shown by experiments and exhibits that a tapering coil can be made to serve as a belt fastener, the same as one that is not, however awkwardly. We are little concerned with either contention. The purpose as well as the operation of the two machines is radically different. The Garland could not make a coil, nor yet insert one; and while the needle which it employs might, perhaps, be twisted into the edge of the material to be sewed, and left there, even if this were capable of producing any serviceable result, it would be something imposed upon the invention which is not to be found in it. In addition to this, the rollers do not intermesh with an intermediate gear-wheel, pivoted at the hinging point of the two frames,—an important feature, as we have seen, of the patent in suit, by which is preserved the operative relation of the rolls as adjusted to meet different thicknesses of material and sizes of coil. The Webster (1886) is an overedge sewing machine, somewhat similar in construction and action to the

Garland. A spiral needle is used, and it is rotated between grooved rollers, only that all are cylindrical, instead of tapering. The needle revolves, but does not advance; the material to be sewed being drawn forward upon it, and the thread carried through it in that manner. It may be said of this, as of the Garland, that it was not intended and is not adapted to do the work of the patent in suit, and could not be made to do so without radical reconstructive changes. In this case, also, there is no intermediate gear-wheel pivoted at the hinging point of separable frames, the materiality of which has been indicated. The Farnum (1888) is an intricate and ponderous machine for making heavy spiral steel springs for use on cars and locomotives. This, of itself, is almost enough to deprive it of any relevancy. But the defendants, by a cross-section at one end, are able to disclose two rollers geared with an intermediate gear-wheel, located at a point where the frames which carry the rollers may be said to be hinged or pivoted; the effect of this being to keep the rollers in gear during the slight adjusting motion which is capable of being given them. But a literal mechanical correspondence such as this is not necessarily an anticipation. The principles of mechanics are always the same, and, in the almost endless combinations of them which are possible, it is not to be expected that duplications will not occur. Where they appear, the question, as I understand it, is whether the new use is so closely analogous as to have been presumably brought about by what had preceded it, or whether it is so remote and different that the result cannot be ascribed to mere suggestion. C. & A. Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586. Stated in another form, it may be said that the mere mechanical adaptation of an old device to an analogous use is not invention, while a new application in a different art, whereby a new and distinct result is produced, will be. In the present instance the similarity is incidental and unsuggestive. The two arts are only remotely related, all that can be said of them being that both have to do with the making of spiral coils. The Farnum is involved and powerful, designed solely for the manufacture of heavy car springs, and not in the least degree capable of forming a wire coil such as is made by the plaintiffs,— much less, of inserting it in the end of a belt or bag. It may be safely said that, if the alleged anticipating parts were removed from it, it would take something more than mere mechanical adaptation to evolve a wire-coil machine out of them, and that only by a strained construction can they be regarded as suggesting the device in suit. The Entrekin (1885) has given me more difficulty. Here we obviously have two rolls set, the one in a fixed and the other in a movable frame, hinged together; both being geared with an intermediate gear-wheel, pivoted at the hinging point. This, in terms, corresponds with the claim before us, and the only distinction that can be made is the art in which the two appear,—the Entrekin being a photograph burnisher; the other, a wire-coil machine. With not a little hesitation, I conclude that this is sufficient to differentiate them and sustain the novelty of the one in suit. You cannot say of it that it is simply a mechanical adaptation of the earlier invention, something more than that being required to make out of it the opera-

tive device which we have here. It may be a question whether the claim is not broader than it ought to be, and it must be confessed that it would be much easier to sustain it if it embodied some of the other features which were referred to at the opening of this opinion, and which enter, as it seems to me, into the real invention, such as the peripheral grooves of the rollers, or the intermediate space between them and the clamping plates in which the coil is formed. But taking the claim as it stands, I am not prepared to say that it is insufficient; being saved by the use, which is entirely novel, and unsuggested by this reference.

Finding no anticipation, therefore, in the prior art, the case turns on the question of infringement. With regard to this, it is to be observed that the words "in a wire-coil machine, substantially as described," which are found in the claim relied upon, carry nothing into it which is not specifically enumerated there, either for the purpose of narrowing it to avoid anticipation, or broadening it to make out infringement. McCarty v. Railroad Co., 160 U. S. 110, 16 Sup. Ct. 240, 40 L. Ed. 358; Frederick R. Stearns & Co. v. Russell, 29 C. C. A. 121, 85 Fed. 218. The defendants do not infringe, therefore, simply because they manufacture a wire-coil machine which operates in a general way like that of the complainants. It must appear that they employ in that connection the particular features of the claim in controversy, or a substantial equivalent. An examination of their machine discloses that it is made up of two separable frames,—a fixed upright one, in which are the jaws that hold the fabric while the coil is being inserted, and a movable one, hinged to it, in which the mechanism to effect the inserting is carried bodily.

This mechanism consists of three grooved rollers, geared together by two intermediate idlers; the idlers and the middle or rear roller being journaled in the sides of the movable frame, and the other two

rollers being journaled eccentrically in two small circular frames set in the same. By this construction the upper and lower rollers are able to be swung to and from each other and the third roller, so that the space between them may be adjusted to coils of different sizes. This motion, which is but slight, is effected by means of links or arms attached to the circular frames in which the rolls are set, and connected with a nut turning on a threaded shaft worked with a crank. These arms, being operated in this way, turn the circular frames on themselves, and thereby swing the rollers, eccentrically set in them, back and forth in the arc of a circle; this arc in each case being practically the same as would be described if each roller swung on the center of the adjoining idler, as a pivot. It is contended that this is the equivalent of that which appears in the claim in controversy, but of this I am not persuaded. As an essential feature of the claim, the inventor has tied himself to a train of gears, the intermediate and controlling one of which is pivoted at the hinging point of the movable with the fixed frame. Assuming, for the sake of argument, that the circular frames in which the upper and lower rolls are set are movable, within the terms of the patent, each is pivoted on its own center, at which, in order to infringe, we should have to have a concentric intermediate gear-wheel connecting the three rolls. It is obvious that this construction is not to be found in the defendants' machine. The most that can be charged is that, when the frames are rotated in the process of adjusting the rolls, each roll in the course of that adjustment is made to swing in the arc of a circle, the center of which is the pivot of the adjoining idler. It may, perhaps, be said that the rolls are severally pivoted at these two points, and at each, of course, we have one of a connecting train of gears; but the patent calls for one pivotal center, and not two, and this must be the pivotal or hinging point of the frames, and not of the rolls, as here. No doubt, by the ingenious mechanism which they have adopted, the defendants accomplish a somewhat equivalent result; but to that they are entitled, provided they effect it by practically different means. It is not the idea that is patented, but the particular mechanical combination devised for bringing it about. This includes, of course, all substantial equivalents, but not every other method imaginable. There must be some reasonable correspondence between the two, not only in the function performed, but in the way by which it is done, which cannot be said of the defendants' machine. In the present instance the only similarity is in the result, and that is not enough.

Let a decree be drawn dismissing the bill on the ground of noninfringement, with costs.

### On Application for a Rehearing.

#### (January 24, 1903.)

It is, no doubt, true, as suggested in the application by the plaintiffs for a rehearing, that the defendants do not escape infringement by a double construction, each half of which is imitative of the plaintiffs' invention; nor did I miss that part of their contention. It may be that I did not make it as clear as I should, but what I intended

to maintain was that, while the defendants accomplished the same result as the plaintiffs, they did it by a mechanism which was inherently different. They have rolls, and the rolls are set in frames, as they had to be; and there is a fixed frame, as well as a movable one. To that extent there is an apparent correspondence, but it is one of terms, merely; the essential thing of the plaintiffs' patent, that the frames pivot at the center of the connecting gear-wheel, being wholly absent. The truth is that the only movable frame, within the meaning of the patent in the defendants' machine, is the one which carries all the rolls bodily, and is hinged, entirely independent of them, to the upright form in which the jaws are. The small circular frames set in the sides of the main movable frame revolve on their own peripheries, and, in that sense, may be said to move; but they do not move to or from each other to accomplish the adjustment of the rolls and clamping jaws to the different thicknesses of material and sizes of coils, as in the plaintiffs' patent, and therefore they do not move in the sense that is there intended. The adjustment of the rolls is in fact accomplished by means of the eccentricity of the journals of the rolls with the circular frames that carry them, when the latter are rotated by the arms or links attached to them; the rolls being carried to or from each other. That they move in the arc of a circle somewhat coincident with that which has its center at the pivot of the adjoining idler is a mere happen-so. No doubt, they are kept in mesh while this is being done, but not because of or by means of it, but, as you might say, notwithstanding it, for, if the arcs were a little longer, they would go out of mesh entirely. In securing the motion of the rolls by means of their eccentric setting, the defendants, therefore, employ a distinct mechanism, not found, in terms or in principle, in the plaintiffs' patent, and in no sense a mechanical equivalent of it, and do not, therefore, infringe. It is to be remembered, also, that in the plaintiffs' patent it is the frames that are hinged at the pivotal center of the intermediate gear-wheel, whereas in the defendants' machine it is the rolls that move about the alleged corresponding pivotal center, and not the frames,—a material distinction.

The so-called admission of the defendants' expert is not counter to anything which I have expressed. His statement is a very qualified one, and the qualification robs it of any benefit to the plaintiffs; and, even if it went further than it does, I would not feel myself necessarily bound by it.

The motion for a rehearing is refused.