## VACUUM ENGINEERING CO. v. DUNN.

(Circuit Court of Appeals, Second Circuit.    November 11, 1913.)

### No. 42.

1. PATENTS (§ 283*)—SUIT FOR INFRINGEMENT—DEFENSES.

A patentee cannot defend against a suit for infringement brought by his assignee on the ground that he was induced to part with the patent by unfair representations.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–450, 452; Dec. Dig. § 283.*]

2. PATENTS (§ 64*)—CONSTRUCTION AND SCOPE—PRIOR ART—FOREIGN INVENTION.

Under Rev. St. § 4923 (U. S. Comp. St. 1901, p. 3396), which provides that a patent issued to one who at the time of his application believed himself to be the original and first inventor of the thing patented shall not be held void on account of the invention having been previously known or used in a foreign country, if it had not been patented or described in a printed publication, a United States patent issued to a foreigner for an invention made in a foreign country, but not patented there nor described in a printed publication, cannot be considered in the prior art to limit a patent granted later, but on an application filed while the application for the foreign invention was pending.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 79; Dec. Dig. § 64.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PATENTS (§ 328*)—INFRINGEMENT—VACUUM CLEANING APPARATUS.

> The Locke & Dunn patent, No. 893,853, for an apparatus for removing dust by pneumatic action, and No. 919,369, for suction apparatus for pneumatic cleaning systems, construed, and *held* infringed, except as to claims 2, 3, 4, and 5 of the second patent.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District. Court, Southern District of New York, holding that defendant has infringed two United States letters patent and granting the relief usual in such cases. The patents in question are No. 893,853, issued July 21, 1908, to William Locke and Elias B. Dunn (the defendant here) for an "apparatus for removing dust by pneumatic action," and also No. 919,369, issued April 27, 1909, to the same persons, for "suction apparatus for pneumatic cleaning systems." The opinion of the District Court will be found in 202 Fed. 967.

See, also, 189 Fed. 634.

E. J. Prindle, of New York City, for appellant.

L. F. H. Betts, of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [1] Infringement is the only substantial matter in controversy, and the questions mainly discussed are whether certain other patents require such a construction of the claims relied upon that defendant's device will avoid infringement. Defendant was one of the patentees and his interest passed by proper assignments to complainant company in which he became a stockholder. He asserts that he was unfairly treated by his associates and "frozen out" of the company; for any such injury he has his remedy in some appropriate action. He cannot defend a suit for infringement brought by the legal owner of the patent on the ground that he was induced to part with title to the patents by unfair representations. Nor can he dispute the validity of the patents. Therefore his defense has been directed to an effort to show that the claims are narrow in their scope. The patents mainly relied on by him are Schiodt, 854,670 (U. S.) and Kenney, 807,283 and 847,948 (U. S.).

[2] As to the Schiodt patent we agree with Judge Holt that it cannot be considered as part of the prior art. Briefly the facts are these: Schiodt lived in England and made his invention there; it was not patented or published prior to date of the Locke-Dunn patent. Schiodt filed application with United States Patent Office May 3, 1905, Locke & Dunn's application was filed March 9, 1906, and patent issued to them July 21, 1908. Schiodt's patent was granted May 21, 1907. Under section 4923, U. S. Rev. St. (U. S. Comp. St. 1901, p. 3396), Locke & Dunn, original inventors, could not be defeated by knowledge of the invention in a foreign country, when not patented or published there. It makes no difference that the person in the foreign country having such knowledge was also an inventor. Appellant seeks to avoid the statute on the theory that the foreign inventor "gave the *American*

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*public* a knowledge of his invention through the Patent Office" when he filed his application. But in reality by that act he gave the American public nothing. His application was confidential; the *public* could not see it or be informed of its contents until patent issued upon it. Before that date came Locke & Dunn with their application. Under these circumstances we do not see how the Schiodt patent can be considered "prior art." See our opinion in Westinghouse M. Company v. General Electric Company (C. C. A.) 207 Fed. 75, filed June 14, 1913. Even if it were in the prior art we concur with Judge Holt in the conclusion that it does not affect the claims of the patents in suit.

The patents principally relied upon, and the only ones that need be considered are the Kenney patents. Comparing them with the device of complainant's two patents it seems quite plain that, although the various elements are individually old—as they nearly always are in an art which has made any progress, Locke & Dunn effected a radical departure from the cumbrous old system as exemplified in Kenney with separate containers connected by hose or piping. They created a unitary structure, compact and efficient; so far as we can see, a meritorious invention. Of course it does not lie in the mouth of this defendant, himself one of the patentees, to deny that it was an invention sufficiently meritorious to receive a patent. But since he, no longer owning the patent, is making and marketing a unitary vacuum cleaner, which bears a very close resemblance to the structure shown in the second Locke & Dunn patent, differing only in some few structural changes which enable him to escape any charge of Chinese copying, he undertakes, as patentees generally do when sued for infringement by their assignees, to cut down the scope of their claims, so as to make of the combination of the patent, a mere trivial detail of improvement on the older art. Of course a patentee, under such circumstances, is free to argue for a narrow construction of the claims which he framed originally to be broad enough to cover the full scope of his real improvement, but when, after a study of the record, the court reaches the conclusion that the prior art does not require the claims to be cut down as far as he contends they should be, it is not necessary to extend the opinion by any discussion of minute details of structure: It will be sufficient therefore to indicate our conclusions.

[3] The first claim of the earlier Locke & Dunn patent includes "outlet orifices" for discharging what the machine has taken in. The word "orifices" is in the plural, because the Patent Office insisted that it should be plural. But in defendant's machine what goes into the machine comes out again through three orifices; that one of these must be closed while the machine is running seems to us unimportant. In defendant's as in the patentee's machine, there are "means for controlling the flow through these orifices." Two of them are not automatic, but although the description of the patented device indicates that its two orifices are automatic, the claim does not say that they are and the prior art does not require them to be so. Claims 2, 3 and 4 of the earlier Locke & Dunn patent include as an element the connection between "saturating chamber" and "piston chamber" stating it as fol-

lows: Claim 2, saturating chamber "opening into" piston chamber; claim 3, saturating chamber "communicating with" piston chamber; claim 4, saturating chamber "communicating directly" with piston chamber. Defendant contends that, although in his machine the two chambers are brought together into a unitary structure, his two chambers do not communicate directly, because the path followed by the flowing dust and water is not straight, but tortuous with a valve interposed. Comparison, however, of the patent with the Kenney structure which Locke & Dunn undertook to improve, shows very clearly what the passages quoted above from claims 2, 3 and 4 really mean. In Kenney's apparatus the piston chamber and all its appurtenances were in one containing receptacle—in one movable barrel, we might say. The saturating chamber and its appurtenances were in a separate containing receptacle, another barrel.

These two barrels were connected by a flexible hose, so that they might stand upon the floor one foot or ten feet apart, depending on the length of the hose. Locke & Dunn's advance over Kenney was to bring all these parts together in a common receptacle, a marked improvement on Kenney's cumbersome apparatus, and the language quoted from the claims indicates the effecting of this unitary reorganization. We find nothing in the record which requires the quoted words to be taken as narrowing the claims, as defendant contends they should be.

In the later Locke & Dunn patent claim one enumerates as one element a "passage forming direct communication between" piston chamber and operating chamber. Claim 6 enumerates "a passage forming a direct communication" between suction chamber and saturating chamber. The contention that defendant's tortuous passage with a valve differentiates his device is disposed of by what has been already written.

Claims 2, 3, 4 and 5, however, introduce a new element into the combination—quite an efficient one apparently, increasing the application of the pump's suction power. Claim 2 says that the communicating passage enters the piston chamber "intermediate its ends"; claims 3 and 4 say that the passage opens into the piston chamber "midway its ends"; claim 5 describes the passage as being between the saturating chamber and "the central portion of said piston chamber."

Complainant seeks to avoid the effect of these limitations in claims 2, 3, 4, and 5 by contending that the words "piston chamber" as used in those claims do not mean the "piston cylinder," in which the piston is chambered, but the piston cylinder and its appurtenances; in other words, all parts of the machine which are not properly described as saturating chamber. We cannot concur in this construction of the patent. In claim 4 reference is made to one element as the "outlet valves for discharging from said piston chamber." Reference to specifications and drawings shows that these are the outlet valves 12 from the two ends of the piston cylinder. Manifestly the draughtsman of the patent used the words "piston chamber" and "piston cylinder" interchangeably as meaning the same thing. In defendant's structure the dust-laden water is not brought into the piston cylinder midway its

ends, but alternately at either end. It does not infringe these restricted claims of the later patent (2, 3, 4, and 5) and to that extent the decree of the court below should be modified.

Although defendant has prevailed on this appeal as to these four claims, the result is so unimportant and he has been defeated as to so many other claims that no costs of appeal are awarded to either side and the decree in the court below should not be modified as to costs.

Decreed accordingly.