AUTOSALES GUM & CHOCOLATE CO. et al. v. RYEDE SPECIALTY
WORKS.

(District Court, W. D. New York. January 6, 1915.)

PATENTS ⊚⇒328—VALIDITY AND INFRINGEMENT—COIN-OPERATED MECHANISM.
  The Pumphrey patent, No. 665,977, for a coin-operated mechanism,
  claims 5 and 6, *held* valid and infringed. Claim 24, if valid *held* not in-
  fringed.

In Equity. Suit by the Autosales Gum & Chocolate Company and
the Empire Trust Company, as trustees, against the Ryede Specialty
Works, for infringement of claims 5, 6, and 24 of letters patent No.
665,977, for a coin-controlled mechanism, granted to Walter H.
Pumphrey January 15, 1901. On final hearing. Decree for complain-
ants.

A. Alexander Thomas, of New York City, for complainants.
Church & Rich, of Rochester, N. Y., for defendant.

MAYER, District Judge. In August, 1900, when Pumphrey filed
his application, the slot machine art, if it may be so called, had nar-
rowed to a point where the field was limited to improvements directed
to greater simplicity and durability.

"My invention," said Pumphrey, "relates to coin-operated mechanism of a
class adapted particularly for use in connection with 'slot machines.' In
machines of this character the use of a coin for tripping a lock by its weight
or the momentum acquired in its passage through a chute ordinarily neces-
sitates the employment of a locking mechanism, the co-operating parts of
which must be extremely light, delicate, and sensitive to insure a proper re-
sponse under the action of the inserted coin, and as these machines are usu-
ally placed out of doors, exposed to all changes in atmosphere and tem-
perature, a disarrangement or break-down of such locking mechanism fre-
quently occurs, causing the machines to be labeled 'Out of order' for a con-
siderable length of time, which thereby increases the cost of maintenance
and materially reduces the net earnings. It is the object of the present in-
vention to obviate the difficulties above mentioned by effecting the release of
the machine by means of a hand-lever acting through the medium of a coin.
The use of such a lever for this purpose provides the requisite power for
operating a tripping device of simpler and heavier construction than is ordi-
narily employed, and thereby renders the same more efficient and capable of
withstanding the wear and tear with little or no liability of disarrangement
under ordinary conditions, and, furthermore, insures an immediate response
and complete operation upon the insertion of a proper coin."

The claims here in controversy are:

"5. In coin-operated mechanism, the combination of a pivoted coin-carrier
and a pivoted coin-finder, both mounted upon a movable carrier, and relatively
disposed to receive a coin between their adjoining faces, and means for rock-
ing the finder and thereby transmitting motion to the carrier through the
medium of the interposed coin.

"6. In coin-operated mechanism, the combination of a trip-lever and a coin-
carrier and a coin-finder co-operating therewith through the medium of a
coin, a movable carrier common to both the lever and finder, and actuating
means for the finder."

"24. In coin-controlled mechanism, the combination of a member to be actu-
ated, a pivoted trip therefor, spring-sustained normally out of operative re-
lation, a coin-carrier, and a pivoted coin-finder co-operating through the me-

dium of a coin to adjust the trip into a path of travel including said member, and means for operating the coin-finder and advancing the trip into engagement with said finder."

Some question arose as to whether the word "carrier," in the last clause of claim 5, meant the "coin"-carrier or the "movable" carrier or support upon which the coin-carrier and the coin-finder are mounted; but an examination of the file wrapper demonstrates clearly that the word in dispute meant the "coin"-carrier.

The prior art concededly includes four patents, to wit: Cochran, No. 440,570, November 11, 1890; Williams, No. 530,148, December 4, 1894; Williams, No. 580,478, April 13, 1897; and Cook, No. 627,685, June 27, 1899.

It is contended that a later Cook patent, No. 664,235, granted December 18, 1900, application for which was filed on February 15, 1900, should also be considered as in the prior art; but this patent must be excluded under the authority of such cases as Bates v. Coe, 98 U. S. 31. 25 L. Ed. 68; Vacuum Engineering Co. v. Dunn, 209 Fed. 219, 126 C. C. A. 313 (Second Circuit, Nov. 11, 1913); Gray Telephone Pay Station Co. v. Baird Mfg. Co., 174 Fed. 417, 421, 98 C. C. A. 353; Diamond Drill & Machine Co. v. Kelly Bros. (C. C.) 120 Fed. 282; Id., 123 Fed. 883, 59 C. C. A. 370.

Apparently the novelty of the invention in suit resides in the pivotal mounting of the operating lever, the pivoting of the trip-lever and its combined coin-carrier, and the pivoting of the finder co-operating with the latter. According to claim 6 of the Pumphrey patent, the coin-carrier is pivoted, while in Cook it is not; and so in claim 6 there is a "movable carrier common to both the lever and finder," while in Cook there is not any construction in which the trip-lever and the coin-finder are mounted upon a common movable support for their proper operation.

Without further elaboration, it may be said that claims 5 and 6 show these elements above noted over previous patents and thus in a new combination. The practical result is that when a coin is deposited, and the lever or push rod is actuated by hand, the coin-finder, coin-carrier, and trip-lever are moved together bodily with the support, whereby the trip-lever is advanced into engagement with the member to be actuated.

As the constant effort in the art was toward simplification of a mechanism composed of many details, this improvement was sufficient to constitute patentable novelty. But, in the effort to cover every conceivable point by making 27 claims, the patentee probably overstepped the bounds in claim 24, and I think it is likely that this claim was anticipated by Cook, No. 627,685. Be that as it may, the claim, when read against defendant's structure, must be strictly construed.

Infringement of claims 5 and 6 seems clear, but not so with claim 24. In defendant's structure the trip-lever 15 is normally in its operative horizontal position, and no movement takes place when the coin is inserted; while in the structure of Pumphrey's patent the converse is true, because the coin-finder engaging the coin in the coin-carrier acts directly thereon to rock the trip-lever upwardly. The patentee

uses the coin as a means of imparting movement to the trip-lever; the defendant uses the coin merely as an abutment to hold the ejector in its normal position preventing it from dropping, pending the initial inward movement of the carrier *5*, until the trip-lever has passed over the bridge piece of the cover plate, the carrier being then supported independently of the coin.

In view of the above differences in the actions of the structure of the patent in suit and of defendant's mechanism, it cannot be held that defendant's ejector *15* is "spring sustained normally out of operative relation." The spring *19* of defendant's mechanism returns the carriage to its outermost position, and when in this position the finder or projection *12* of the finder *9*, to which the lever *14* of the ejector *15* is attached, engages the framework *1*, so that the trip-lever is rocked upwardly into its normal horizontal position. The spring itself has nothing to do with positioning the ejector in the same sense in which the spring *7a* of the Pumphrey patent operates to move the trip lever *7* downwardly, in which position it is "spring-sustained" out of the path of movement of the member to be operated until a coin has been inserted in the coin carrier and the coin is acted upon by the finder.

With a claim entitled to broader scope, this difference in operation might not escape infringement; but, restricting the claim (if valid) to what I think are its proper limits, there is no infringement of this claim.

Complainants may have a decree in accordance herewith, with half costs.