TWENTIETH CENTURY MOTOR CAR & SUPPLY CO. v. HOLCOMB CO.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 49.

1. PATENTS ⊖66—ANTICIPATION—PRIOR PATENT.

A patent granted and published is a part of the prior art with respect to another patent not applied for until afterward, although the patentee in the first patent was a foreigner.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81; Dec. Dig. ⊖66.]

2. PATENTS ⊖36—DATE OF INVENTION—EVIDENCE.

A mere statement, printed at the head of an application for a patent, that the original application was filed at a prior date, cannot be considered as evidence to carry the date of invention back to the time stated.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 40; Dec. Dig. ⊖36.]

3. PATENTS ⊖328—VALIDITY AND INFRINGEMENT—WIND-SHIELD FOR MOTOR CARS.

The Williams patent, No. 1,011,892, for a wind-shield for vehicles, held not for a useful invention, and also, as limited by the prior art, not infringed.

Appeal from the District Court of the United States for the District of Connecticut.

On appeal from a decree of the District Court for the District of Connecticut dismissing the bill in an action based on letters patent No. 1,011,892 granted to Martin L. Williams December 12, 1911, for an improvement in wind-guards for vehicles. The original application was filed February 11, 1908, but was divided and the present application was filed November 21, 1908.

⊖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Patents to Tolman, Bertram & Lamoreaux, Sprague and Holbrook have been introduced in the record improperly, as they are all subsequent to November 21, 1908, the filing date of Williams' application now under consideration. Why the record is incumbered with such irrelevant matter has not been explained.

The decision of the District Court is reported in 208 Fed. 155.

Albert H. Graves and Frank L. Belknap, both of Chicago, Ill., for appellant.

Ward Church and Harrison Hewitt, both of New Haven, Conn., for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The patent is for an improvement in windshields for use, principally, in motor cars. It relates to that type of collapsible wind-shields in which the upper sash is adapted to be lowered or folded over the lower one when not in use. In the early history of the art the wind-shield consisted of a single glass so mounted that it shielded the chauffeur and the occupants of the car and when not needed for that purpose could be turned down over the hood of the car. The difficulty with this arrangement was that when the glass became blurred by rain or fog so that the chauffeur could not see ahead, the entire shield had to be lowered or else the occupants of the car were subjected to the danger of collision with an approaching car or other obstacle on the road. The difficulty was obviated, to a great extent, by dividing the shield into two sections, on a line a little below the chauffeur's range of vision, and turning down the upper section out of the way. This arrangement was not entirely satisfactory for two reasons—when the movable section was up it prevented the free circulation of air, and, when covered with mist, it was impossible to see ahead. When the upper section was turned down there was practically little protection for the occupants of the car from rain, dust and the rush of the air, especially when proceeding at high speed.

Williams undertook to improve upon these conditions by providing an upper sash which may be lowered as in the previous structures, and also may be shifted to an intermediate position to permit the chauffeur to see the road ahead through the space left between the two sections, which the trial judge found not to exceed three inches. The complainant's structure is sufficiently described by the third claim, which is as follows:

"3. A wind-guard for vehicles comprising an upright lower sash, bracket supports connected with the upper portion of said sash at each side thereof, and extending laterally therefrom, an upper sash, links connected to the sides of the upper sash and to the respective bracket supports at points remote from the lower sash, said brackets supporting the lower edge of said upper sash in tilted relation to the lower sash with its lower edge offset and spaced away from the upper edge of said lower sash, and means for locking the lower edge of said upper sash in either its alined or tilted position."

The novel feature which, it is alleged, distinguishes the Williams structure from the prior art is the arrangement by which the upper portion is so tilted as to afford protection to the inmates of the car in

case of rain, snow or fog and at the same time to permit the driver to see the road ahead. It is unnecessary to discuss all of the patents properly in evidence. The patent to Lingley of June 16, 1908—application filed May 6, 1907—discloses the alleged novel feature of the Williams patent, although the difficulties are remedied in a slightly different manner. Lingley says:·

"Weather screens as at present constructed are formed of two frames pivotally and concentrically connected together and each carrying a sheet of glass, there necessarily being a space or crack between the two frames or sheets of glass at the joint which admits a considerable draft and also rain in the case of wet weather and this is the case whether the upper part of the screen is arranged either in a vertical or inclined position.

"Now the objects of the present invention are to remedy these defects and also to provide means whereby perfect protection from the weather will be afforded in any position of the screen while in certain positions a clear view of the road will be left between the screens and which is of great importance in wet weather when the screens are more or less opaque.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"The parts may be so set that a clear space is left between the top of the lower part of the screen 6 and the bottom of the upper part 8 thereof as shown by the full lines in Fig. 14 so as to give a clear view of the road more especially in rainy weather when the screen is more or less obscured but generally the glass of the upper part 8 of the screen overlaps the lower part 6 thereof so that weather, that is rain or the like, is effectually excluded and in certain positions such as that shown at Fig. 4, draft is also largely prevented."

[1] It is true that Lingley is, as stated in his description, a British subject, but he has been granted a patent by the United States applied for May 6, 1907, and granted June 16, 1908, 5 months before the Williams application was filed and 3½ years before the Williams patent was granted. We know of no reason why this patent should not be considered. It was actually published and part of the prior art when Williams filed the application on November 21, 1908, upon which the patent in suit was granted. We do not consider this ruling in conflict with our decision in Vacuum Co. v. Dunn, 209 Fed. 219, 126 C. C. A. 313. In that case the Schiedt patent which was held not to be a part of the prior art was not patented or published prior to the date of the Locke-Dunn application.

[2] We have selected the Lingley patent as showing perhaps more clearly than any other the mechanism for producing the opening through which the road may be seen when the glass is obscured by rain or mist. The same thing, substantially, is shown in the British patent to Bill which was applied for May 7, 1906, and accepted December 6, 1906. We do not see how the date of the Williams invention can be found to be February 11, 1908, because of a statement printed at the head of the specification: "Original application filed February 11, 1908." That application is not in evidence, we do not know what it contains and it would establish a new rule in patent litigation if the date of invention may be fixed by a mere statement printed at the top of the application but not a part thereof.

[3] It is not entirely clear what space is left in the Williams structure through which the driver may look when the upper and lower glasses are obscured by fog or rain. The court below finds that when

the upper glass is swung into position away from the lower glass, the horizontal distance between them cannot exceed three inches. What the perpendicular distance, through which the chauffeur must look in order to see the road, would be is not stated but, manifestly, it must be much less than three inches. To rely upon such a narrow opening through which to view the road ahead seems to us a highly dangerous expedient. When it is remembered that cars moving at the rate of 25 miles an hour which is not generally considered excessive, are approaching each other at the rate of 50 miles an hour, it seems plain that if the drivers relied upon these narrow perpendicular openings they would be in the jaws of collision before they knew of each other's approach. A shield which does not enable the driver, going at the ordinary rate of speed to detect obstacles, moving and stationary, in time to prevent collision may be new, but it can hardly be called useful. The proof on this branch of the case is not as clear and definite as it might be but we are convinced that the structure shown in the description and drawings might become a dangerous one when vision through the glass is totally obscured and the chauffeur must rely solely upon the narrow opening between the top of the lower glass and the bottom of the upper glass.

Judge Martin found that the Williams patent was not for a useful invention and that its claims must be narrowly construed in view of the prior art. As so construed he held that they were not infringed. As we agree with him in these conclusions, the decree is affirmed with costs.