## THE COLON.

(District Court, S. D. New York. April 12, 1917.)

**1.** SHIPPING ☞84(3)—LIABILITY OF VESSEL—INJURIES TO STEVEDORE—NEG-
LIGENCE.

A vessel, whose owner furnished planking for the hatch cover, which
by the exercise of diligence or carefulness he might have known was in-
sufficient in length, or had become worn at the edges, so that it did not
fit snugly, was liable in an action in rem for injuries to a stevedore,
caused by the plank giving way under him, since, though the owner was
not the stevedore's employer, he was obliged to exercise ordinary care to
provide reasonably safe equipment for the use of those hired to load or
unload the vessel.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 350.]

**2.** SHIPPING ☞86(2)—LIABILITY OF VESSEL—EVIDENCE—NEGLIGENCE—DE-
FECTIVE PLANK.

On a libel to recover damages for personal injuries to a stevedore, evi-
dence *held* sufficient to show that the owner of the vessel was negligent
in failing to discover that the plank furnished to cover the hatchway
was insufficient for the purpose.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 356, 357.]

**3.** EVIDENCE ☞75, 77(5)—PRESUMPTIONS—FAILURE TO PRODUCE EVIDENCE.

Where the claimant of a vessel failed to produce in court the plank
which was alleged to have caused the injury, or to call as a witness the
ship's carpenter, who examined the plank the day after the accident, and
gives no explanation for the failure to produce such evidence, there is a
presumption that the evidence would be unfavorable to the claimant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 95, 97.]

**4.** SHIPPING ☞84(5)—LIABILITY OF VESSEL—INJURIES TO STEVEDORE—AS-
SUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE.

An employé of a stevedore is not required to inspect the planks fur-
nished by the vessel to determine their fitness for use on the hatchways,
but assumes only such dangers as are usual in his work, including those
of which he had knowledge, or might have become aware by the exercise
of reasonable care.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 342.]

**5.** DAMAGES ☞132(6)—PERSONAL INJURIES—BROKEN LEG.

Where a stevedore, 30 years old and capable of earning $25 a week,
had his left femur broken, which caused considerable pain, and required
hospital treatment for 80 days, and had prevented his working since, and
had been left with the leg three-quarters of an inch shorter than the
other, so that he would always limp, he will be awarded $5,250.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 377.]

In Admiralty. Libel by John Ivancich against the steamship Colon
to recover damages for personal injuries. Decree rendered for libelant.

Lawrence B. Cohen, of New York City (William J. Martin and
George V. A. McCloskey, both of New York City, of counsel), for
libelant.

Richard Reid Rogers, of New York City, for respondent.

HAZEL, District Judge. This is a libel by a longshoreman in the
employ of a master stevedore to recover damages for injuries sustained
on account of the negligence of the steamship Colon in failing to fur-

nish a reasonably safe place for him to work in. The specific act of negligence relied on is that claimant failed to furnish a suitable plank for a section of No. 2 hatch cover on the orlop deck—that is, a plank long enough to properly fit into the shoulder of the strongback—in consequence of which libelant was precipitated into the hold with the plank, while standing upon it in an attempt to fit an adjacent plank into the bearings of the strongback.

[1] Although claimant was not in any legal sense the employer of libelant, it was nevertheless obliged to exercise ordinary care in providing reasonably safe and suitable equipment, hatch covers or planks, for the use of those who were hired to load or unload the steamer and to cover or uncover the hatches. If by the exercise of diligence or carefulness claimant might have known that the planking for the hatch cover was insufficient in length, or had become worn at the edges from use so that it did not fit snugly on the shoulder or recess of the strongback, as asserted, there was a failure of duty to libelant, who sustained injuries by reason thereof, and recovery may be had in an action in rem.

[2] The single question here is: Were the defects and imperfections in the planking as proven such as would have been discovered on a proper examination by claimant? It is conceded that the plank which tumbled into the hold was too short by as much as $1\frac{1}{2}$ inches, and did not fit snugly into the ledge or lateral support; but it is insisted that it was in good condition and not worn off at the edges, that the hatch covers customarily were numbered and piled, the port, starboard, and middle sections being in separate piles, and that the libelant and his fellow servants selected a plank designed for a middle section, which had been negligently put among those intended for a side section when the hatch covers were previously taken off from the hatch. Although the covers are claimed to have been specifically marked, there were no markings or numbers on the plank in question, which was taken by the stevedores from the port pile, and, as far as appearances indicated at the time, correctly fitted into the shoulder of the strongback.

[3] After the accident the plank was examined, and was found to be $1\frac{1}{2}$ inches too short for the side section, and presumably rested shiftingly on the ledge. Several witnesses have testified that on the morning following the accident this plank was measured in the presence of the ship's officer and ship's carpenter, and was so badly worn off at the edges that it was not only too short for the side section, but was too long for the middle section. It was not produced in court for inspection, and the ship's carpenter has not testified, either as to the measurements or the condition of the plank, and, as his absence is unexplained, the rule invoked by proctor for libelant would seem to apply, namely, that the failure to produce testimony which claimant, upon whom the burden rested in view of the issue, might have produced, generates a presumption that such testimony, if produced, would have been unfavorable to its contention. The Bertha F. Walker, 220 Fed. 669, 136 C. C. A. 309. Certainly the production of the plank would have shown whether or not it was in a fit condition to use as a hatch cover, and the theoretical considerations urged to offset libelant's evi-

dence as to its worn and unfit condition are unpersuasive. The witness Roberts, it is true, testified that the ends of the plank were in good condition, and that all of the covers snugly fitted their places on the strongback; but the weight of evidence is to the contrary.

The witnesses Shano, Powen, and Pol, though associate workmen of libelant, were not discredited. They unqualifiedly swore that the hatch cover which tumbled into the hold was worn at the ends from use to such an extent as to afford play in the clearance of the shoulder, and this version is corroborated to some extent by the diagram of Surveyor Glasser, indicating that the plank did not fit the shoulder without play, and could not have fitted into any other part of the side sections, or into the central section. And although the diagram is criticized, because the depth of the shoulders is not given, this does not justify ignoring the testimony of the several workmen that the plank did not fit the middle section, was too short for the side section, and was taken from the proper pile. I am satisfied from the evidence that the plank in question was too badly worn at the ends for use, and had become an improper appliance, and that its defective condition was the proximate cause of the accident. It should have been adequately inspected before use by those in charge of the steamer Colon, in which case the accident would not have occurred.

[4] Libelant was not required to measure the planks, or make a close inspection as to their fitness and adaptability, but had a right to assume that they were reasonably fit for use. He is deemed to have assumed only such dangers as were usual and incident to the nature of his work, including, of course, those of which he had knowledge, or of which he might have become aware by the exercise of reasonable care. The danger arising from stepping on a cover which appeared to be secure in its place, while performing his work at night, was not a result of negligence or want of care on his part, but, on the contrary, resulted solely from the omission on the part of the steamer, or those who were in charge of her navigation, to exercise care and precaution, and she must therefore be held in fault and responsible for the ensuing damage.

[5] The injuries sustained by libelant were of a serious character. His left femur was broken, in consequence whereof his leg became stiffened, and two years after the accident he is still limping in his gait, owing to the fact that the injured leg is shorter than the other by three-fourths of an inch. While I think that in time his leg will improve and get stronger, it will nevertheless always be more or less weak. He has suffered pain, was treated in the hospital for 80 days, and has since not been able to perform any work. He is 30 years old; his earning capacity at the time of receiving the injuries was $25 per week; and in view of the circumstances an award of $5,250 to compensate him for pain, suffering, and disability, including the loss of his earnings, together with the expenses necessarily incurred for medicine and medical attendance, would not, I think, be excessive.